**In re SEARCH WARRANT FOR LAW OFFICES EXECUTED ON MARCH 19, 1992 and Grand Jury Subpoena Duces Tecum Dated March 17, 1992.**

No. M–11–188.

United States District Court,
S.D. New York.

Jan. 21, 1994.

Mary Jo White, U.S. Atty. for the S.D.N.Y. by Lisa M. Smith, Asst. U.S. Atty., New York City, for plaintiff.

Stillman, Friedman & Shaw (Edward M. Shaw, of counsel), and Hoffinger, Friedland, Dobrish, Bernfeld & Stern (Mark W. Geisler, of counsel), New York City, for defendants.

### MEMORANDUM AND ORDER
### [GRAND JURY PROCEEDINGS]

BRIEANT, District Judge.

A law firm located in White Plains, New York, hereinafter "the firm", its corporate client, hereinafter "the client", and two individuals who are the principals of the client, on notice to the United States Attorney, seek an order:

(a) directing the Government to return all property seized on March 19, 1992, pursuant to a search warrant, from the law firm, alleg-edly in violation of the attorney client privilege and/or attorney work product privilege;

(b) modifying or quashing a March 17, 1992 Grand Jury subpoena served upon the client to the extent that such subpoena calls for documents protected by the attorney client privilege and/or work product privilege, and;

(c) granting such other or further relief as may be proper.

The factual background of this case is distorted somewhat from the usual Grand Jury procedures because the attorneys for movants proceeded by informal agreement with the United States Attorney. The search warrant issued by this Court was in fact executed, and the materials required under the subpoena duces tecum, which covers a slightly longer period of time than the documents seized in the warrant, were actually produced to Assistant United States Attorney ("AUSA") Smith, with a purported limitation on the use which she could make of them, pending further agreement of the parties or order of the Court.

There was, at the time of the issuance of the warrant and subpoena, and still is, an ongoing investigation by the Grand Jury. The client and its principals are subjects or targets of that Grand Jury investigation.

AUSA Smith, a member of the staff of the United States Attorney in this District, assigned to the White Plains Courthouse, informed the attorneys for movants that, "she was uninvolved in the investigation relating to all these documents, and that acting as a 'Chinese wall' with respect to any privileged documents, she was taking possession of all items seized from the law firm and keeping them separate from the [other] AUSA and government agents then and still involved in a broad criminal investigation of [client]." Shaw affidavit, ¶ 4.

This motion became necessary because AUSA Smith said that absent a motion she would turn over twenty cartons of material seized and/or subpoenaed from the law firm, to the other AUSA who is presenting the evidence before a Grand Jury.

The search warrant issued March 18, 1992, by the undersigned Judge, returnable before Magistrate Judge Mark D. Fox, described with particularity the items to be seized. Most of them appear to be required records which must be kept and retained by persons engaged in business affairs similar to those of the corporate client.

For example, the search warrant extended to: "Files relating to the following 4 [real] properties; [addresses omitted] including, but not limited to [a list of documents substantially all of which are either on file in public offices or copies of which are in the possession of banks or persons adverse to the client]." Included also in the description of matters to be seized were bank account records, ledgers, bank statements and cancelled checks, petty cash records and receipts, accounts payable records and accounts receivable records, together with a catchall for the "fruits and instrumentalities" of certain statutory violations.

This search warrant, and two others on the same date and part of the same investigation, was issued pursuant to the affidavit and application of a Special Agent of the Internal Revenue Service, Criminal Investigations Division, which consists of thirty-nine pages.

The affidavit contained the following provision:

*"Chinese Wall"*

89. Efforts will be utilized to insure that the search of [the firm's] office does not result in the seizure of privileged documents or documents not related to [client]. Agents will attempt to seize only [client's] documents in [the firm's] possession, and will attempt not to seize any work product, charts or memoranda pertaining to the defense of the Government's investigation.

90. In addition, separate agents not assigned to this investigation will be responsible for conducting the search of [the firm's] offices. All documents seized from [the firm's] offices will be segregated and maintained separately. Further, an Assistant United States Attorney ("AUSA") with no connection to this investigation will attend the search to answer any questions regarding privilege which may arise in the course of the search of [the firm's] office,

as well as in the headquarters of [client]. If the AUSA determines that documents in question are privileged, they will not be seized. After the search, the documents seized from [the firm's] offices will remain segregated and the AUSA will review those documents to determine if they are covered by any privilege, prior to turning them over to the investigative team.

■ An attorney at the law firm, from whose private office within the firm most but not all of the boxes were seized, has submitted an affidavit which the Court assumes for the purposes of this motion to be truthful. The attorney states that fourteen of the cartons which were taken from his private office would have to be "protected" from the Grand Jury, "because they had been segregated by me as a part of a confidential, attorney-directed investigation into possible illegal activity within and against [the corporate client] and turning these documents over to the Government would violate both the work product doctrine and the attorney client privilege". The attorney also urges alternatively that the documents, or some of them, are subject to the individual attorney client privilege of the principals of the corporate client.

According to the attorney, the law firm was retained in the Fall of 1991, after one of the prior attorneys for the corporate client had been arrested by federal agents. The attorney was directed by his senior partner to, "conduct an investigation to determine whether several different kinds of illegal activity may have taken place within and against [the corporate client] including some matters arising out of [the arrested attorney's] contacts with [the corporate client and its employees]".

The attorney states that this investigation was begun also in preparation for litigation, including possible civil claims against the former attorney, former employees and contractors of the corporate client, as well as defending against governmental claims and any federal criminal investigation of the corporate client.

The attorney states that he had earlier conducted confidential interviews of employees of the corporate client and discussed with

other attorneys who represented the corporate client their interviews with corporate employees, and reviewed a number of documents. Based on what he had learned in these privileged consultations and interviews, he selected and segregated a number of the corporate files which he believed were relevant to his investigation and transported them from the client to his own office within the law firm, which was locked each night.

The point of this argument is that corporate records of the sort which ordinarily would be accessible by subpoena *duces tecum,* or amenable to a search warrant, and not privileged because they are required records which must be kept by the corporation in the regular course of its business in order to comply with the corporation law and other regulatory authority pertaining to the nature of its business, would somehow all become privileged and protected from access by the Grand Jury simply because the attorney had arranged them in some manner, the disclosure of which would betray his own secret thoughts, or his own understanding of the problems he was working on, thereby giving an unfair advantage to the Government or its agents.

This Court declines to extend the concept of work product so far as to protect otherwise nonprivileged corporate documents, simply because the lawyer has separated and arranged them in a manner convenient to his intended study for one or more legal problems and which reflects his analysis and thoughts concerning the matters which he was investigating.

The argument on its face is slightly frivolous because it assumes that this lawyer investigating these documents could detect or perceive something in them or perceived the need to examine them, which was not readily apparent to a skilled special agent.

This case is a garden variety tax fraud of mammoth proportions, in which one of the individual participants has been alleged to have referred to himself in conversation as the "[Leona] Helmsley of Westchester". The means by which such a fraud is accomplished are relatively simple and well known to lawyers and IRS special agents. It is preposterous to suggest that a determined auditor would need the help of the thought processes of this law firm in arranging or selecting files, in order to find evidence of the fraud. A special agent would simply look at the largest or most recent transactions, all of which appear of public record, until he or she found something.

But, accepting the argument for the moment, this claim is one which any person or corporation under investigation could make, and the policy consequences of permitting a client to insulate incriminating corporate documents which otherwise would have to be produced, by handing them over to an attorney who arranges them in some logical or illogical fashion, is simply too drastic to accept.

This Court concludes that intrinsically privileged documents under the circumstances of this case, that is, those documents which were privileged before they got to the lawyer, or which were created by the lawyer, should remain privileged, and although we lack much confidence in the concept of a Chinese Wall, should be restored to their owner or owners. Required records which are not privileged, or records which are not privileged because they are subject to the crime/fraud exception should be turned over to the Assistant United States Attorney in charge of the prosecution of the matter. Such records gain no privilege simply by being turned over to the attorney. *Matter of Bekins Record Storage Co., Inc.,* 62 N.Y.2d 324, 476 N.Y.S.2d 806, 465 N.E.2d 345 (1984).

A schedule of items consisting of 115 pages is attached to the memorandum of law submitted by movant. The Government should return all such items which are irrelevant to the investigation, or which are conceded to be privileged intrinsically and without regard to where they were seized. Within ten (10) days counsel shall submit for in camera consideration by the Court any such items as to which a good faith dispute exists as to intrinsic attorney client privilege based solely on the contents of the document.

■ This Court concludes that under the unusual circumstances of this case there was no waiver of attorney client privilege simply by responding to the subpoena duces tecum

to the Chinese Wall assistant rather than moving to quash the subpoena as should have been done. Waiver is defined as the intentional relinquishment of a known right. Clearly, there was no intent to waive, under the circumstances here present. Resisting, as we do with great difficulty, the temptation to plagiarize, and take for our own the racist wisecrack about the Chinese Wall, and its inevitable apertures, found in *United States v. Sapere*, 531 F.2d 63, 66 (2d Cir.1976), this Court notes that reliance on the implementation of a Chinese Wall, especially in the context of a criminal prosecution, is highly questionable, and should be discouraged. The appearance of Justice must be served, as well as the interests of Justice. It is a great leap of faith to expect that members of the general public would believe any such Chinese wall would be impenetrable; this notwithstanding our own trust in the honor of an AUSA. Furthermore, in a case such as this the Chinese Wall attorney to perform the search required the physical assistance of agents, laborers, truckmen and others not bound by the ethical considerations which affect a lawyer. Those on the Mongol side of the Wall may well access the same information from other sources, and have difficulty convincing a defendant or the public that the information did not pass over or through the Wall.

▮ The Government also argues that the individual principals of the corporate client lack standing to raise the issues of attorney client privilege and the work product doctrine. The argument (Brief, p. 6) is that, "There is no indication that there was an attorney client relationship" between the law firm and the individuals. The Court believes under the totality of the circumstances that an attorney client relationship existed on the part of the individuals. A corporation is incapable of committing a crime except through its individual officers and agents. The individuals understood themselves to be subjects of any possible investigation, along with the corporation itself and the motivation for retaining the law firm to make the preliminary investigation extended to benefiting them individually, as well as their corporation. It would be slicing the salami unduly fine to claim that the individuals had no attorney client relationship. All the circumstances suggest that in entering into their communications with the attorney they must have thought that they did, and such thinking was reasonable. This Court rejects so much of the argument as is based on lack of standing on the part of the individual subjects of the criminal investigation.

This decision, and any subsequent rulings which this Court may make as to individual listed documents, are without prejudice to any motion to suppress which may properly be asserted by any person who is actually indicted, and against whom any of these files or documents are sought to be used at trial.

An issue has been raised concerning possible "highlighting" made by the attorney. If the attorney made highlighting on original corporate documents which are not privileged and are otherwise amenable to subpoena, that highlighting will not be sufficient to secure a work product privilege in the document. No competent attorney should make such marks on original documents which might need to be offered in court as part of a defendants' case, for all that was known at the time the marks were made. Where highlighting was done on copies, this Court finds it reasonable to restrict production to the original, or to have the highlighted copies of documents sanitized by being recopied without the highlighting. An essential aspect of work product privilege is a good faith intention and desire to preserve the privilege, and no reasonable person making highlighting or other entries on an original document could have a reasonable expectation to preserve a work product privilege in such an original document.

Except to the extent set forth above, the motion is in all respects denied.

SO ORDERED.