BOYCE & ISLEY, PLLC, EUGENE BOYCE, R. DANIEL BOYCE, PHILIP R. ISLEY, AND LAURA B. ISLEY, PLAINTIFFS v. ROY A. COOPER, III, THE COOPER COMMITTEE, JULIA WHITE, STEPHEN BRYANT, AND KRISTI HYMAN, DEFENDANTS

No. COA08-313

(Filed 17 March 2009)

**1. Appeal and Error— cross-assignments of error—cross-appeal—sanctions**

Defendants' motion to dismiss appellee's cross-assignments of error and cross appeal, and a motion for sanctions against appellee, are denied because: (1) plaintiff's argument was appropriately classified as a cross-assignment of error and not subject to dismissal; and (2) the Court of Appeals declined to impose sanctions on plaintiff for violations of Appellate Rules 25 and 34, although plaintiff was cautioned to refrain from employ-

ing an argumentative and speculative presentation of the facts and procedural background of this case in violation of N.C. R. App. P. 34(a)(3).

**2. Appeal and Error— appealability—interlocutory order—substantial right—qualified immunity—attorney work product**

Defendants' appeal from an interlocutory discovery order regarding whether a defense attorney's notes should be disclosed to plaintiffs since they are allegedly protected under the qualified immunity for attorney work product implicated a substantial right that would be lost if not reviewed before the entry of final judgment.

**3. Discovery— pretrial—attorney work product**

The trial court abused its discretion in a defamation and unfair and deceptive trade practices case arising out of the alleged publication of a false and fraudulent political television advertisement by concluding that the verbatim text that a defense attorney entered into her computer from plaintiff's files was not attorney opinion work product of defendants' counsel, and thus was discoverable, because: (1) the trial court did not make any findings or conclusions in either its 18 April 2006 order or in its 12 December 2007 order that defendants' counsel committed wrongful or inappropriate actions in copying this text; (2) the act of defendants' counsel of inputting text from plaintiff's files into her laptop was analogous to an attorney highlighting select portions of copied documents considered relevant to defendants' litigation strategy that plaintiff already had in his possession; (3) the disclosure of the notes would direct plaintiffs to the few documents and portions thereof that defendants' counsel focused on and considered significant enough to emphasize from among a vast number of items; and (4) even assuming *arguendo* that the verbatim text qualified merely as ordinary work product as opposed to opinion work product, plaintiffs have neither argued nor shown that there is a substantial need or undue hardship to justify production, particularly given that plaintiff has all of the underlying documents in his possession.

**4. Discovery— purported violation of protective order—request to destroy verbatim text**

The trial court did not err by failing to base its 12 December 2007 order upon the purported violation of the protective order by defendants' counsel, nor did it abuse its discretion by

failing to require defendants to destroy the pertinent verbatim text, because the verbatim text did not include confidential, sensitive, or privileged information. Thus, the protective order was not implicated.

Appeal by defendants from orders entered 18 April 2006 and 12 December 2007 by Judge John B. Lewis, Jr. in Wake County Superior Court. Heard in the Court of Appeals 22 October 2008.

*Boyce & Isley, PLLC, by G. Eugene Boyce, Philip R. Isley, and Laura B. Isley, plaintiff-appellee, pro se.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jim W. Phillips, Jr. and Charles E. Coble; Smith Moore LLP, by Alan W. Duncan and Allison O. Van Laningham, for defendant-appellants.*

HUNTER, Robert C., Judge.

Defendants North Carolina Attorney General Roy A. Cooper, III, his campaign committee for the 2000 election for North Carolina Attorney General (the "Cooper Committee"), and three employees of the Cooper Committee, Julia White, Stephen Bryant, and Kristi Hyman, (hereinafter, collectively referred to as "defendants"), appeal from an interlocutory order entitled "Order, Following *In Camera Review*, On Plaintiffs' Motion Regarding Defendants' Compliance with Protective Order" entered by Judge John B. Lewis, Jr. ("Judge Lewis") on 12 December 2007 and from the "Order on Plaintiffs' Motion Regarding Defendants' Compliance with Protective Order" entered by Judge Lewis on 18 April 2006,[1] which was "incorporated . . . by reference" into the 12 December 2007 Order. Plaintiff G. Eugene Boyce ("Mr. Boyce"), appearing *pro se*, cross-assigns error[2] to Judge Lewis's 12 December 2007 Order. After careful review, we affirm in part and reverse in part.

---

1. Defendants purport to appeal from Judge Lewis's 17 April 2006 Order. In his 12 December 2007 Order, Judge Lewis stated that the 18 April 2006 Order was entered on 17 April 2006. While Judge Lewis signed the Order on 17 April, the file stamp in the record indicates this Order was entered on 18 April 2006. For purposes of this opinion we refer to said Order as the 18 April 2006 Order. Defendants make no argument regarding the 18 April 2006 Order on appeal. Accordingly, any argument pertaining to this Order is abandoned pursuant to N.C.R. App. P. 28.

2. Defendants have filed a Motion to Dismiss which argues, *inter alia*, that Mr. Boyce's cross-assignment of error is really a cross-appeal which should be dismissed due to several violations of the North Carolina Rules of Appellate Procedure. We discuss this issue *infra*.

## I. Background

The underlying case in this appeal began over eight years ago on 22 November 2000, when the law firm of Boyce & Isley, PLLC, and its members, Mr. Boyce, R. Daniel Boyce ("Dan Boyce"), Phillip R. Isley, and Laura B. Isley (hereinafter, collectively referred to as "plaintiffs"), filed a complaint in Wake County Superior Court alleging that defendants published a false and fraudulent political television advertisement (the "advertisement") regarding Dan Boyce and Boyce & Isley, PLLC during the 2000 election campaign for the office of North Carolina Attorney General. Dan Boyce and Mr. Cooper were opponents in the November 2000 general election for Attorney General. The audio portion of the advertisement stated:

> I'm Roy Cooper, candidate for Attorney general, and I sponsored this ad. Roy Cooper, endorsed by every major police organization for his record of tougher crime laws. Dan Boyce—his law firm sued the State, charging $ 28,000 an hour in lawyer fees to the taxpayers. The judge said it shocks the conscience. Dan Boyce's law firm wanted more than a police officer's salary for each hour's work. Dan Boyce, wrong for Attorney General.

> The lawsuits to which the ad apparently referred were a group of class action lawsuits brought on behalf of thousands of plaintiffs alleging that taxes levied by the State were unconstitutional. Dan Boyce or members of the plaintiff law firm allegedly served as counsel to the plaintiffs in each of those cases, and plaintiffs referred to the cases in various campaign materials and on their law firm's website.

*Boyce & Isley, PLLC v. Cooper*, 169 N.C. App. 572, 574, 611 S.E.2d 175, 176 (2005) (hereinafter, "*Boyce II*"). The advertisement specifically referenced *Smith v. State*, 349 N.C. 332, 507 S.E.2d 28 (1998) (hereinafter, "*Smith A*").

Plaintiffs alleged that the advertisement defamed Dan Boyce, the Republican nominee for the Office of Attorney General, and the member attorneys of Boyce & Isley, PLLC. Specifically, they asserted that defendants' publication of the advertisement was defamatory *per se* and constituted unfair and deceptive trade practices ("UDTP"). They further asserted that defendants had conspired to violate N.C. Gen. Stat. § 163-274(8), which prohibits "any person [from] publish[ing] . . . derogatory reports with reference to any candidate in any primary or election, knowing such report to be false or in reck-

**BOYCE & ISLEY, PLLC v. COOPER**

· · [195 N.C. App. 625 (2009)]

less disregard of its truth or falsity when such report is calculated or intended to affect the chances of such candidate for . . . election[.]"

The instant case is the third time this Court has been asked to address issues pertaining to the underlying case. *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 568 S.E.2d 893 (2002) (hereinafter, "*Boyce I*"), *appeal dismissed and review denied*, 357 N.C. 163, 580 S.E.2d 361 (2003); *see also Boyce II*, 169 N.C. App. at 572, 611 S.E.2d at 175. In *Boyce I*, 153 N.C. App. at 39, 568 S.E.2d at 904, this Court held that plaintiffs had presented sufficient claims upon which relief could be granted for defamation and UDTP,[3] and in *Boyce II*, 169 N.C. App. at 578, 611 S.E.2d at 178-9, this Court dismissed as interlocutory defendants' appeal of the trial court's denial of defendants' motion for judgment on the pleadings. A more detailed summation of the facts regarding the underlying case can be found in *Boyce I*.

Here, the instant appeal involves issues which stem from a pre-trial discovery dispute between the parties and specifically center on what should be done with certain verbatim text which one of defendants' attorneys, Patti Ramseur ("Ms. Ramseur") copied into her laptop computer from Mr. Boyce's client files on 12 September 2005. Prior to addressing this issue, we first discuss the procedural background of this case as it relates to discovery.

On 9 May 2003, pursuant to N.C.R. Civ. P. 26, defendants filed a "Motion for Protective Order" to govern the conduct of discovery between the parties. On 1 July 2003, then Chief Justice Lake designated this case as exceptional pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts and assigned the case to Judge Lewis. On 17 September 2003, Judge Lewis entered a "Protective Order" providing rules and procedures to govern the discovery process between the parties, particularly with regard to the discovery of confidential or privileged information.[4]

· On 1 September 2005, defendants' counsel sent plaintiffs letters via facsimile and United States Mail asking them to, *inter alia*, reply to their prior discovery requests for, *inter alia*: documentation pertaining to the "Smith A, Bailey/Emory/Patton, Smith/Shaver, and Faulkenbury/Woodard/Peele/Hailey Cases", particularly documents related to attorney time and billing records, correspondence between plaintiffs, documents related to the receipt and distribution of fees,

---

3. Plaintiffs did not appeal the dismissal of their election law claim. *See Boyce I*, 153 N.C. App. at 28, 568 S.E.2d at 897.

4. The Protective Order is discussed in greater detail *infra*.

documents sent to prospective clients, and other documents related to attorney work on the tax cases. Defendants contended that these materials were relevant and discoverable in part due to plaintiffs' claim that the advertisement was false because Dan Boyce did not work on *Smith A* or the other tax cases even though Dan Boyce's campaign materials stated that he did work on these cases. On 9 September 2005, defendants filed a "Motion to Compel Responses to Discovery Requests" which sought the production of, *inter alia*, the aforementioned materials.

Mr. Boyce was counsel of record in the aforementioned cases and possessed documents and records pertaining to them at his home office in Raleigh, North Carolina. Though plaintiffs offered to pay the copying costs, Mr. Boyce refused to copy and produce the requested documents, which he asserted were too voluminous. However, he did agree to permit defendants' counsel to inspect files related to the tax cases at his home office.

On 12 September 2005, Ms. Ramseur and a legal assistant traveled to Mr. Boyce's home office to undertake an inspection. There, Mr. Boyce informed Ms. Ramseur that documents from the following cases were available for inspection: "*Smith v. State of North Carolina* (95 CvS 6715), *Shaver et al. v. State of North Carolina* (98 CvS 00625), the consolidated cases of *Smith v. State of North Carolina* and *Shaver et al. v. State of North Carolina* (95 CvS 6715 and 98 CvS 00625), the *Fulton* case, the *Bailey/Emory/ Patton* cases, and the disabled retiree cases." Mr. Boyce did not individually mark these documents as confidential or as otherwise protected from discovery.

Ms. Ramseur informed Mr. Boyce that she had brought a laptop computer to take notes, but that she had forgotten to bring a power cord. Mr. Boyce offered one of his power cords and assisted her with plugging in the computer. With the exception of a few brief moments, Mr. Boyce remained in the room during the entire 12 September 2005 document inspection. At no time did Mr. Boyce ask defendants' counsel not to take notes, nor did he take any action to end the inspection process on that date.

At a 15 September 2005 hearing, Mr. Boyce informed Judge Lewis of certain activities that occurred during the 12 September document inspection. Specifically, he told the court that during the 12 September inspection, he believed that Ms. Ramseur was not solely marking the documents she wanted copied or making a list of said

BOYCE & ISLEY, PLLC v. COOPER

[195 N.C. App. 625 (2009)]

documents; rather, she appeared to enter into her laptop computer what appeared to be verbatim text from the documents contained in his client files from the tax cases. Plaintiffs argued that this violated the Protective Order, which they asserted merely allowed defendants to inspect, designate, and make a list of which documents they wanted Mr. Boyce to copy, but not to copy any documents or text from said documents without Mr. Boyce's explicit approval. Consequently, plaintiffs contended that defendants were required to return the text to Mr. Boyce so that he could make a determination as to whether the text Ms. Ramseur had copied was "confidential" or "highly confidential."

Defendants argued that Ms. Ramseur's actions did not violate the Protective Order because Mr. Boyce should have specifically delineated each document as confidential or highly confidential prior to making them available to defense counsel for inspection.[5] Furthermore, defendants contended that they should not be required to turn over the notes Ms. Ramseur took during the 12 September 2005 inspection, including the verbatim text, because these materials were protected as defendants' counsels' work product.

On 18 October 2005, plaintiffs filed a "Motion Regarding Defendants' Failure to Comply with Protective Order". In this motion, plaintiffs reiterated Mr. Boyce's belief that Ms. Ramseur copied verbatim text "from folders of Class Members/Client documents from Plaintiffs' intangibles tax cases files (*Smith A Protestor and Smith/ Shaver Non-Protestor* cases)" and that this violated the Protective Order because said Order limited defendants to creating a " 'list' " or " 'inventory' " of the documents they wanted to copy. Specifically, plaintiffs contended that the Protective Order provides that the producing party has the right to protect its documents by placing an appropriate "confidentiality" marking on them and to have unauthorized copies destroyed even if the claim of confidentiality or privilege is made subsequent to production. In support, plaintiffs cited paragraphs five, ten, and eleven of the Protective Order, which provide in relevant part:

5. All information or documents disclosed in this litigation, whether or not containing Confidential Information, shall be used

5. The Protective Order provides in pertinent part: "Any information supplied in documentary or other tangible form may be designated by the producing person or producing party as Confidential Information by placing or affixing on each page of such document, or on the face of such thing, the legend 'Confidential' or 'Highly Confidential,' as appropriate."

by the receiving party solely for purposes of preparation for trial, pretrial proceedings and trial of this action and not in connection with any other litigation or judicial or regulatory proceeding or for any business, commercial, competitive, political, personal or other purpose. Any summary, compilation, notes or copy containing Confidential Information and any electronic image or database containing Confidential Information shall be subject to the terms of the Protective Order to the same extent as the material or information from which such summary, compilation, notes, copy, electronic image or database is derived.

. . .

10. In the event any document is produced that the producing person later claims is protected by the attorney-client privilege, work product doctrine or other privilege or immunity, the receiving party shall, within five (5) business days of receipt of a written request by the producing person, return the original to the producing person, destroy all copies thereof, as well as, all notes, memoranda or other documents that summarize, discuss or quote the document, and delete any copy of the document, or any portion thereof, from any word processing or data base tape or disk it maintains. Production of privileged, work-product-protected or otherwise immune documents in the course of discovery in this action shall not constitute a waiver of any privilege, work product protection or immunity, either as to the produced document or as to any other documents or communications. . . . Inadvertent failure to designate any information pursuant to this Protective Order shall not constitute a waiver of any otherwise valid claim for protection, so long as such claim is asserted within fifteen (15) days of the discovery of the inadvertent failure. At such time, arrangements shall be made for the return to the designating person of all copies of the inadvertently mis-designated documents and for the substitution, where appropriate, of properly labeled copies.

11. This Order is entered solely for the purpose of facilitating the exchange of information between the parties to this action without involving the Court unnecessarily in this process. Nothing in this Order, nor the production of any documents or disclosure of any information pursuant to this Order, shall be deemed to have the effect of (i) an admission or waiver, including waiver under the rules of evidence, by any party or other sub-

BOYCE & ISLEY, PLLC v. COOPER

[195 N.C. App. 625 (2009)]

scriber to this Order; (ii) altering the confidentiality or nonconfidentiality of any such information; or (iii) altering any existing obligation of any party or other subscriber, or the absence of such obligation.

In order to ascertain whether defendants' counsel violated the Protective Order, plaintiffs asked Judge Lewis: to "conduct an *in camera* inspection of the text and data copied from Plaintiffs' client files and downloaded electronically to the computer word processing data base," to "impose appropriate sanctions to assure future compliance by Defendants with the Protective Order," and to impose sanctions if the court determined that "Defendants have not complied with the Protective order, extracted more than an 'inventory' or 'list' of documents, and if Defendants do not timely destroy all attorney/client material other than what appears to be . . . [a] 'list' or 'inventory' of client documents[.]"

Defendants acknowledged before Judge Lewis that Ms. Ramseur's notes were not limited to an inventory or list of the documents and that her notes included short snippets of verbatim text from certain documents contained in the files provided by Mr. Boyce as well as her thoughts regarding them and her theories of the case. Citing N.C.R. Civ. P. 26(b)(3), defendants claimed that the entirety of Ms. Ramseur's notes—both the verbatim text she typed into her computer as well as her notes pertaining to said text—were protected as defendants' counsels' attorney work product because they contained "the mental impressions, conclusions, and opinions of Defendants' counsel[.]" Consequently, once again, defendants objected to having to produce their counsels' notes "for *in camera* inspection or otherwise[.]" Finally, defendants stated that Ms. Ramseur had not copied any confidential information from Mr. Boyce's files and that they would treat the verbatim text as confidential until such time as Mr. Boyce identified which documents contained in his files were indeed confidential.

On 18 April 2006, Judge Lewis entered an order requiring "Defendants . . . [to] provide to the Court for an *in camera* review only, and not for production to Plaintiffs, the portion of attorney notes taken during document inspection at Eugene Boyce's home office on September 12, 2005, which contains verbatim text from documents reviewed" within ten days of the date of the Order.

During a 9 October 2007 hearing, Judge Lewis reviewed the verbatim text that Ms. Ramseur had copied. On 12 December 2007, Judge

Lewis entered an Order[6] entitled "Order, Following *In Camera* Review, On Plaintiff's Motion Regarding Defendants' Compliance with Protective Order[,]" which incorporated the 18 April 2006 Order by reference and made numerous findings of fact. Judge Lewis concluded "that . . . [t]he portion of attorney notes . . . contain[ing] verbatim text from documents reviewed during the inspection at Gene Boyce's home office on 12 September 2005:" (1) did "not contain any confidential. or sensitive information relating to third parties or any information that is privileged as between Gene Boyce and his former clients" and (2) "[i]ncludes information, which is verbatim text from Plaintiffs' documents that is relevant and discoverable by [Defendants]." Judge Lewis further concluded that "[b]ecause of the broad scope of discovery, . . . the notes are discoverable . . . [and] are not attorney work product because they are quotes from documents." Judge Lewis mandated that defendants had to provide plaintiffs "with a copy" of the verbatim text which he had reviewed within ten days from the date of the Order, but did not order the destruction of the notes. In sum, Judge Lewis concluded: (1) the verbatim text defendants' counsel copied is not confidential or privileged; (2) the documents contained in Mr. Boyce's files are relevant and discoverable; and (3) defendants had to provide plaintiffs with a copy of the verbatim text because the scope of discovery is broad and because the text does not constitute work product, not because of any purported violation of the Protective Order.

On 18 December 2007, defendants simultaneously filed notice of appeal to this Court as well as a "Notice of Non-Production" and a "Request to Recognize Stay of Order During Appeal" with Judge Lewis. In a 21 December 2007 Order, Judge Lewis decreed, *inter alia*, that a "stay of the [12 December] Order arose automatically upon filing of the Notice of Appeal, and shall remain in place during the pendency of appellate proceedings related to the Order." This appeal followed.

## II. Analysis

### A. Motions

**[1]** Here, defendants have respectively filed with this Court a "Motion to Dismiss Appellee's Cross-Assignments of Error and Cross-Appeal" and a "Motion for Sanctions Against Appellee[.]" Specifically, defendants argue that this Court should dismiss Mr. Boyce's cross-

---

6. In the December Order, Judge Lewis noted that "[r]ecords reflect that defendants' counsel [had] complied with" his 18 April 2006 Order on 18 April 2006.

assignments of error for violation of N.C.R. App. P. 10(d) and that we should dismiss Mr. Boyce's cross-appeal for violation of N.C.R. App. P. 13 and N.C.R. App. P. 25. Regarding sanctions, defendants assert that Mr. Boyce should be sanctioned due to violating the aforementioned Appellate Rules and because Mr. Boyce's brief to this Court violates Appellate Rule 34(a)(3), in that it "[is] so grossly lacking in the requirements of propriety, grossly violate[s] appellate court rules, [and] grossly disregard[s] the requirements of a fair presentation of the issues to the appellate court." N.C.R. App. P. 34(a)(3). Consequently, they argue that we should impose sanctions against Mr. Boyce pursuant to N.C.R. App. P. 25(b) and N.C.R. App. P. 34.

Appellate Rule 10(d) provides that "an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken." Defendants contend that Mr. Boyce's "purported cross-assignments of error violate Rule 10(d) because they do not argue for 'an alternative basis in law for supporting the . . . order[.]' " Defendants note that Mr. Boyce's brief is entitled "Response Brief of Plaintiff-Appellee and Plaintiff-Cross Appellant[.]" According to defendants, Mr. Boyce has actually cross-appealed from and not cross-assigned error to Judge Lewis's 12 December 2007 Order.

Defendants note that when a party cross-appeals, pursuant to Appellate Rule 13(a)(1), he must file a cross-appellant's brief "[w]ithin 30 days after the clerk of the appellate court has mailed the printed record to the parties[.]" N.C.R. App. P. 13(a)(1). They further note that Appellate Rule 13(c) provides that "[i]f an appellant fails to file and serve his brief within the time allowed, the appeal may be dismissed . . . on the court's own initiative." *See also Ferguson v. Croom,* 73 N.C. App. 316, 317-18, 326 S.E.2d 373, 375 (1985) (dismissing appeal pursuant to Appellate Rule 13(c) because even though the party labeled the trial court's purported error as a cross-assignment of error and filed an appellee's brief, the party was actually bringing a cross-appeal and failed to file and serve an appellant's brief within the time allowed). In addition, defendants note that N.C.R. App. P. 25(a) provides that dismissal is a possible sanction for failing to take timely action. Here, defendants contend that Mr. Boyce failed to take timely action because he did not file his "cross-appellant's brief within thirty (30) days of 10 April 2008, the date on which the Clerk mailed the printed Record."

In accordance with *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 199-200, 657 S.E.2d 361, 366-67 (2008), we have considered defendants' and Mr. Boyce's arguments pertaining to the purported violations asserted in defendants' Motion to Dismiss in conjunction with Appellate Rules 25 and 34. While the title of Mr. Boyce's brief and some of the arguments contained therein contain language that lend support to defendants' contentions, Judge Lewis's 12 December 2007 Order is clear that said Order is not based on the Protective Order in this case, and as such, the 12 December Order does deprive Mr. Boyce "of an alternative basis in law for supporting the . . . order . . . from which appeal has been taken." N.C.R. App. P. 10(d). Accordingly, we conclude that Mr. Boyce's argument is appropriately classified as a cross-assignment of error and not subject to dismissal.

In support of their Motion for Sanctions, defendants assert that Mr. Boyce's brief grossly violates the aforementioned Appellate Rules and that it violates Appellate Rule 34(a)(3) because it: (1) contains a highly argumentative statement of relevant facts; (2) presents a false history of this case and defendants' conduct; (3) grossly misstates the trial court's findings and conclusions; and (4) wrongly accuses "Defendants' counsel of engaging in misconduct and unethical conduct, including theft, allegedly in violation of the trial court's orders, the Rules of Civil Procedure, and the Rules of Professional Conduct[.]"

Once again, as directed by our Supreme Court in *Dogwood*, we have carefully considered defendants' and Mr Boyce's arguments in conjunction with Appellate Rules 25 and 34. In our discretion, we decline to impose sanctions on Mr. Boyce for these purported violations. However, defendants' argument as to Appellate Rule 34(a)(3) does contain merit, and we caution Mr. Boyce to refrain from employing an argumentative and speculative presentation of the facts and procedural background of this case.

### B. Interlocutory Appeal

[2] Here, defendants contend that their assertion that Ms. Ramseur's notes should not be disclosed to plaintiffs because they are protected under the qualified immunity for attorney work product (N.C. Gen. Stat. § 1A-1, Rule 26(b)(3) (2007)) implicates a substantial right. In addition, defendants point out that the disclosure of said notes would moot their appeal on this issue. Hence, defendants assert their interlocutory appeal is reviewable by this Court. We agree.

A review of discovery orders is generally considered interlocutory and therefore not usually immediately appealable unless they affect a substantial right. "[W]here a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right . . . ."

*Isom v. Bank of Am., N.A.*, 177 N.C. App. 406, 410, 628 S.E.2d 458, 461 (2006) (alterations in original) (quoting *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 24, 541 S.E.2d 782, 786, *cert. denied*, 353 N.C. 371, 547 S.E.2d 810 (2001)). In addition, where "[an] appeal affects a substantial right that would be lost if not reviewed before the entry of final judgment, the issue is properly before [this Court]." *Id.*

Accordingly, we conclude defendants' appeal is properly before us and review the trial court's discovery order for abuse of discretion. *Id.* (citation omitted).

## C. Production of Verbatim Text

**[3]** The threshold issue in defendants' appeal is whether Judge Lewis erred in concluding that the verbatim text, which Ms. Ramseur entered into her computer from Mr. Boyce's files, is not the attorney work product of defendants' counsel and thus is discoverable by plaintiffs. As discussed *infra*, we conclude that the verbatim text is the work product of defendants' counsel and consequently that the trial court erred by ordering defendants' to disclose a copy of the verbatim text to plaintiffs.

In order to successfully assert protection based on the work product doctrine, the party asserting the protection . . . bears the burden of showing (1) that the material consists of documents or tangible things, (2) which were prepared in anticipation of litigation or for trial, and (3) by or for another party or its representatives which may include an attorney, consultant . . . or agent.

*Id.* at 412-13, 628 S.E.2d at 463 (citations and internal quotation marks omitted; second alteration in original).

Although not a *privilege*, the exception is a "qualified immunity" and extends to all materials prepared "in anticipation of litigation or for trial by or for another party or by or for that other party's consultant, surety, indemnitor, insurer, *or agent*." The protection is allowed not only [for] materials prepared after the other party

has secured an attorney, but those prepared under circumstances in which a reasonable person might anticipate a possibility of litigation. Materials prepared in the ordinary course of business are not protected, nor does the protection extend to *facts* known by any party.

*Willis v. Power Co.*, 291 N.C. 19, 35, 229 S.E.2d 191, 201 (1976) (citations omitted). "[N]o discovery whatsoever of [work product containing] the 'mental impressions, conclusions, opinions, or legal theories of an attorney *or other representative* of a party' concerning the litigation at bar . . . is permitted under [N.C.R. Civ. P. 26(b)(3)]." *Id.* at 36, 229 S.E.2d at 201 (citation omitted). However, documents that constitute work product but that do not contain or reflect the aforementioned input of an attorney or other representative may be discoverable "[u]pon a showing of 'substantial need' and 'undue hardship' involved in obtaining the substantial equivalent[.]" *Id.* "In the interests of justice, the trial judge may require *in camera* inspection and may allow discovery of only parts of some documents." *Id.*

In the instant case, defendants argue that: (1) they met their burden of showing that the verbatim quotes are their counsels' work product; (2) the verbatim quotes qualify as opinion work product, i.e., that they reflect defense counsel's " 'mental impressions, conclusions, opinions, or legal theories' . . . concerning the litigation at bar" and are not discoverable; (3) even if the verbatim text does not qualify as opinion work product, it is nonetheless work product and still not discoverable because plaintiffs did not assert before Judge Lewis, let alone show, that they had a " 'substantial need' " for the text and that they would incur an " 'undue hardship' . . . in obtaining the substantial equivalent"; and (4) plaintiffs cannot make this showing because the verbatim text was copied from documents which are within Mr. Boyce's control. *Id.* (citation omitted).

On appeal, Mr. Boyce argues that Ms. Ramseur's notes are not entitled to work product protection because he asserts the verbatim text was taken from his files in violation of the Protective Order, the North Carolina Rules of Civil Procedure, and the Rules of Professional Conduct and because this text was protected by the attorney-client privilege.

As discussed *infra*, we agree with defendants and conclude the trial court abused its discretion in ordering them to provide plaintiffs with a copy of the verbatim text that defendants' counsel copied from certain documents contained in Mr. Boyce's files.

At the outset, we note that Judge Lewis did not make any findings or conclusions in either his 18 April 2006 Order or in his 12 December 2007 Order that defendants' counsel committed wrongful or inappropriate actions in copying this text. Furthermore, in the 12 December Order, which was entered following the court's *in camera* review of the verbatim text, Judge Lewis explicitly concluded that said text "[d]oes not contain any confidential or sensitive information relating to third parties or any information that is privileged as between Gene Boyce and his former clients[.]" Given that Judge Lewis concluded that the verbatim text did not contain confidential or privileged information, he implicitly concluded that the Protective Order was not implicated here. We have carefully reviewed the verbatim text at issue, which is less than three pages in length, and conclude that Judge Lewis did not abuse his discretion in determining that said text does not contain confidential or privileged information.

Defendants acknowledge that their contention that "when counsel, during discovery, compiles a document containing, among other things, selected excerpts from the opposing party's documents, . . . that compilation [is] attorney work product[,]" is an issue of first impression for this Court. They further acknowledge that they have failed to locate any case law from this or any other jurisdiction which is exactly on point with the facts here. However, defendants argue that their contention that the verbatim text here is opinion work product and barred from plaintiffs' discovery is supported by analogous federal highlighting and selection cases, i.e, cases in which federal courts have respectively determined that an attorney's highlighting of documents and an attorney's selection of a smaller subset of documents from a voluminous set of documents, is work product. Defendants note that this Court has looked to federal decisions for guidance on issues of first impression regarding the North Carolina Rules of Civil Procedure, including in analyzing the scope of the " 'in anticipation of litigation' " work product requirement. *Cook v. Wake County Hospital System*, 125 N.C. App. 618, 623, 482 S.E.2d 546, 550 (1997).

In support of their highlighting argument, defendants cite four published federal district court cases: (1) *Rohm and Haas Co. v. Brotech Corp.*, 815 F. Supp. 793, 795 (D. Del. 1993) (holding that an attorney's "highlighting [of passages of an affidavit] reflects the thought processes of counsel in connection with a matter for which he was providing advice and services to his client and . . . should be protected from disclosure either under the attorney client privilege or

as work product"), *affirmed,* 19 F.3d 41 (Fed. Cir. 1994); (2) *Federal Deposit Ins. Corp. v. Singh,* 140 F.R.D. 252, 254 (D. Me. 1992) (stating that even though underlying memorandum was discoverable, "[the attorney's] attached notes and highlighting on the memorandum itself [we]re not subject to discovery"); (3) *In re Search Warrant for Law Offices,* 153 F.R.D. 55, 59 (S.D.N.Y. 1994) (stating that where an attorney highlights original corporate documents which are not privileged, "th[e] highlighting will not be sufficient to secure a work product privilege in the [original] document", but "[w]here highlighting was done on copies [of the original document] . . . it [is] reasonable to restrict production to the original, or to have the highlighted copies of documents sanitized by being recopied without the highlighting"); (4) *Biben v. Card,* 119 F.R.D. 421, 429 n.4 (W.D. Mo. 1987) (stating that while SEC transcripts in defense counsel's possession were not work product, "[a]ny notations, highlighting, etc., made by counsel for objecting defendants upon copies of the transcripts already in counsel's possession would be protected from discovery by the attorney work product rule").

We believe that here, the act of defendants' counsel of inputting text from Mr. Boyce's files into her laptop is analogous to an attorney highlighting select portions of copied documents. In addition, defendants' counsel sought to examine these files because they were relevant to establishing what, if any, work Dan Boyce and the other members of Boyce & Isley, LLP performed on the prior, class action tax cases and consequently were relevant to defendants' defense in this matter.

Furthermore, the notes that were produced *in camera* clearly show that Ms. Ramseur did not copy entire documents or substantial parts of documents contained in Mr. Boyce's files. Rather, she inputted very short, select pieces of documents that she considered relevant to defendants' litigation strategy. In addition, unlike the instant case, where the party seeking production already has the underlying documents in their possession in their entirety, the cases cited by defendants all respectively involve efforts to discover entire documents which the requesting parties did not already possess. We believe this factual distinction creates an even more compelling case for concluding that the verbatim text copied by defendants' counsel here is protected from discovery as plaintiffs, specifically Mr. Boyce, already have these documents in their possession.

Next, while defendants acknowledge that the underlying documents Ms. Ramseur examined were not protected, they argue her

BOYCE & ISLEY, PLLC v. COOPER

[195 N.C. App. 625 (2009)]

selection of "a few items [out of thousands of pages of documents], amounting to less than three pages, that she believed to be important to Defendants' theories of the case[,]" is attorney work product. Defendants contend that this assertion is supported by a variety of federal cases; however they primarily rely on and discuss the following three cases for this proposition: (1) *Sporck v. Peil*, 759 F.2d 312 (3d Cir.), *cert. denied*, 474 U.S. 903, 88 L. Ed. 2d 230 (1985); (2) *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986); and (3) *In re Allen*, 106 F.3d 582 (4th Cir. 1997), *cert. denied*, 522 U.S. 1047, 139 L. Ed. 2d 635 (1998). As discussed *infra*, based on the facts of the instant case, we agree.

"The concept of protecting as opinion work product a lawyer's compilation of non-protected . . . documents developed . . . in the early and mid-1980s . . . [and] has become known as the *Sporck* doctrine, because *Sporck v. Peil* was the first decision to articulate the protection." 2 Thomas E. Spahn, *The Work Product Doctrine: A Practitioner's Guide* 555 (2007) (footnote omitted).

> Perhaps the most confusing and complicated concept in the work product area involves possible opinion work product protection for a lawyer's . . . selection of facts, documents, or witnesses that are *not* themselves intrinsically protected by . . . the work product doctrine.
>
> At one extreme, the concept makes perfect sense. If a lawyer sorts through 100,000 documents produced by an adversary and selects the ten documents the lawyer considers most important, the adversary should not be able to insist that the lawyer identify those ten documents. Under the basic precept of the work product doctrine, the adversary should sort through its own documents and figure out which ten documents *it* considers the most important.
>
> At the other extreme, the concept does not seem appropriate. If a lawyer reviews 100,000 documents produced by the adversary and designates 99,990 of them for copying and further study, the adversary learns nothing about the reviewing lawyer's thought process by asking what documents the lawyer selected.

*Id.* at 554-55. "The *Sporck* doctrine applies only if the adversary has equal access to the pool of documents from which a lawyer selects the documents he or she thinks are the most important." *Id.* at 559.

In *Sporck*, in response to the plaintiffs' discovery request, the defendants produced hundreds of thousands of documents from which the plaintiffs' attorney selected more than 100,000 for copying. 759 F.2d at 313. To prepare defendant Sporck for his deposition, defense counsel showed him an unknown quantity of the numerous documents which had been produced for and copied by the plaintiffs, which defense counsel selected and compiled into a folder. *Id.* None of the defendants' individual documents themselves, in their redacted form, were undiscoverable. *Id.* At Sporck's deposition, plaintiffs' counsel asked him to identify all the documents he examined for the deposition, but he declined to answer based on advice of defense counsel. *Id.* at 314. The Third Circuit concluded that "the selection and compilation of documents [made] by [defense] counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product[,]" *id.* at 316 (citation omitted), and that "identification of the documents as a group will reveal defense counsel's selection process, and thus his mental impressions[.]" *Id.* at 315.

In *Shelton*, the plaintiff deposed the defendant's in-house counsel ("Burns"), who "refused to respond to questions concerning her knowledge of the existence or nonexistence of certain documents[,]" on the basis that she acquired such knowledge in her capacity as the defendant's attorney. 805 F.2d at 1325 (footnote omitted). The Eighth Circuit concluded that defense counsel's process of selecting and reviewing her clients' documents was protected as opinion work product, stating:

> In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research. We believe Burns' selective review of [the defendant's] numerous documents was based upon her professional judgment of the issues and defenses involved in this case. This mental selective process reflects Burns' legal theories and thought processes, which are protected as work product.

*Id.* at 1329 (citations omitted).

In *In re Allen*, 106 F.3d at 608, the Fourth Circuit considered whether a document containing "pages of selected employment records . . . which [the attorney] requested that [her clients] provide to her" was work product. Although the underlying employment

records were discoverable, the Fourth Circuit held that counsel's "choice and arrangement constitutes opinion work product because [the attorney's] selection and compilation of these particular documents reveals her thought processes and theories regarding this litigation." *Id.* (citations omitted).

In the instant case, defendants note that Mr. Boyce provided defendants' counsel with thousands of pages for inspection, and defendants' counsel copied into her computer only a few, short verbatim excerpts from a few of these documents. Defendants contend that the disclosure of the notes would direct plaintiffs to the few documents and portions thereof that defendants' counsel focused on and considered significant enough to emphasize from among a vast number of items. We agree. Consequently, we conclude that the verbatim text entered in the computer of defendants' counsel qualifies as opinion work product and is not discoverable, especially where plaintiffs, specifically Mr. Boyce, already have the underlying, original documents in their possession. As such, the trial court abused its discretion by concluding otherwise. Furthermore, even assuming, *arguendo*, that the verbatim text here qualifies merely as ordinary work product as opposed to opinion work product, we agree with defendants that plaintiffs have neither argued nor shown that there is a "substantial need" or "undue hardship" to justify production, particularly given that Mr. Boyce has all of the underlying documents in his possession.

### D. Mr. Boyce's Cross-Assignment of Error

[4] Mr. Boyce asserts that Judge Lewis erred by failing to base his 12 December 2007 Order upon the purported violation of the Protective Order by defendants' counsel. Because the Protective Order provides the producing party with the right to claim confidentiality or privilege subsequent to production and states that the "receiving party" upon receiving a written request by the producing person "shall . . . return the original to the producing [party], destroy all copies thereof, as well as, all notes, memoranda or other documents that summarize, discuss or quote the document, and delete any copy of the document, or any portion thereof, from any word processing or data base tape or disk" the receiving party possesses, Mr. Boyce contends that Judge Lewis erred by not ordering defendants to destroy "the items or information improperly obtained, copied, and generated by Defendant[s.]"

As discussed *supra*, upon carefully reviewing the verbatim text which defendants produced for *in camera* inspection, we do not

believe that Judge Lewis erred by concluding that the text at issue does not contain any privileged, sensitive or confidential information. As such, the Protective Order was not implicated here. Accordingly, we conclude that Judge Lewis did not abuse his discretion by not requiring defendants to destroy the verbatim text.

### III.  Conclusion

In sum, because we conclude the verbatim text at issue is protected as the work product of defendants' counsel, we conclude Judge Lewis erred in ordering defendants to provide plaintiffs with a copy of said text. Hence, we reverse Judge Lewis's Order as to this issue. In addition, because we conclude that the verbatim text did not include confidential, sensitive, or privileged information, we conclude that Judge Lewis did not err by declining to base his 12 December 2007 Order on the Protective Order and by not ordering defendants to destroy their copies of the verbatim text pursuant to the Protective Order. Hence, we affirm Judge Lewis's Order as to this issue. Accordingly, Judge Lewis's 12 December 2007 Order is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

Judges ELMORE and STROUD concur.