**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1250**

STACY C. HARRELL,

                    Plaintiff - Appellant,

            v.

CITY OF GASTONIA; TERRY L. SULT, individually and in his
capacity as Chief of Police; ED TURAS,

                    Defendants - Appellees.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.  Carl Horn, III, Chief
Magistrate Judge.  (3:07-cv-00396-CH)

Argued:  March 25, 2010             Decided:  August 24, 2010

Before MICHAEL and DAVIS, Circuit Judges, and James A. BEATY,
Jr., Chief United States District Judge for the Middle District
of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** James M. Harrington, THE HARRINGTON PRACTICE, PLLC,
Charlotte, North Carolina, for Appellant.  Patrick Houghton
Flanagan, CRANFILL, SUMNER & HARTZOG, LLP, Charlotte, North
Carolina, for Appellees.  **ON BRIEF:** Bradley P. Kline, CRANFILL,
SUMNER & HARTZOG, LLP, Charlotte, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff-Appellant Stacy C. Harrell ("Harrell") appeals a decision by the district court granting Defendants' motion for summary judgment and dismissing Harrell's claims brought under 42 U.S.C. § 1983 and state libel law. Harrell's claims in this case are related to his former probationary employment as a police officer with the Gastonia, North Carolina Police Department. Specifically, Harrell contends that allegations of poor performance were placed in his personnel file at the time he was recommended for termination, and that the allegedly false statements in his personnel file have impaired his ability to obtain employment with another law enforcement agency, depriving him of a constitutionally-protected liberty interest without due process of law. However, for the reasons discussed below, we conclude that even if Harrell could establish a constitutionally-protected liberty interest, Harrell has been provided with sufficient due process by way of a name-clearing hearing. Therefore, the district court's grant of summary judgment will be affirmed.

I.

Prior to his employment with the Gastonia Police Department, Harrell was employed as a police officer with the

3

Rocky Mount, North Carolina Police Department for four years. In August 2006, Harrell left the Rocky Mount Police Department and was hired by the Gastonia Police Department as a "probationary employee" subject to "summary termination without recourse" during the first year of his employment. Harrell's transition into the Gastonia Police Department was not a smooth one. Harrell contends that he was expected to engage in what he perceived as "civil rights violations," which resulted in disagreements between Harrell and other officers. For example, Harrell contends that he was directed to assist in a vehicle search that was conducted with the driver's consent but that Harrell believed was invalid. In addition, Harrell contends that he was directed to "falsify" a police report in which he described his warrantless search of a vehicle and one of its occupants based on "probable cause." A senior officer, Sergeant Ed Turas, advised Harrell that Harrell could have conducted a "pat down" safety frisk of the individual, but should not have conducted a full search of the individual absent a warrant or consent, unless it was a search incident to arrest. Harrell perceived this conversation as a direction to "falsify" the report regarding the search.[1]

---

[1] The district court reviewed the evidence on this issue, in
(Continued)

On April 10, 2007, approximately eight months after Harrell was hired, and still within his probationary period of employment, Chief of Police Terry L. Sult met with Harrell to advise him that he was being suspended and recommended for termination. The reasons for his suspension and recommended termination were set out in a written Memorandum (the "Sult Memorandum") that was given to Harrell during the meeting. At the meeting, Chief of Police Sult advised Harrell that in his view, Harrell's "integrity is in question," and that Harrell had "demonstrated a repeated failure to follow the orders of [his] supervisors," citing four examples that were set out in the Memorandum. The examples all relate to general concerns that Harrell tended not to follow or accept instructions from his

_____

particular a recorded telephone call between Harrell and Sergeant Turas, and concluded that Sergeant Turas was "advis[ing] the Plaintiff in a general sense how to conduct traffic stops and searches, including counseling the Plaintiff that absent obtaining the subject's consent or a search warrant, he should not search the passengers," but "at no point did he instruct, or even suggest, that the Plaintiff should falsify his report." Harrell continues to contend on appeal that he was directly instructed to falsify the report and was ordered to engage in other "civil rights violations." As noted by the district court, Harrell apparently had a mistaken understanding of certain aspects of search and seizure law. In any event, although Harrell continues to debate these issues before this court, we need not address these issues further since these disputes do not affect the resolution of the actual claims asserted by Harrell in this appeal.

superiors, was argumentative with his superiors, and attempted to subvert the advice of his superiors. The four examples set out in the Sult Memorandum are (1) that Harrell ignored an order from Sergeant Turas not to pursue a speeding vehicle, (2) that Harrell independently contacted federal immigration officials to question the legitimacy of an order by Sergeant Turas not to seize cash that was discovered during a traffic stop; (3) that Harrell contacted the police attorney at her home and misrepresented a deadline to her; and (4) that Harrell failed to report damage to his assigned police vehicle. As to these allegations in the Sult Memorandum, Harrell contends (1) that he did not ignore Sergeant Turas' order to disregard the speeding vehicle, and that he only stopped the vehicle later after being given permission to do so when the driver of the vehicle engaged in additional reckless driving that endangered other motorists; (2) that he did not question Sergeant Turas' order not to seize the cash, and that he contacted federal officials at Sergeant Turas' direction; (3) that he contacted the police attorney on her cell phone at the suggestion of her secretary to make sure the attorney had received information he left for her, and that he did not misrepresent any deadlines; and (4) that he brought his police vehicle in to the city's garage for repair, and that he did not fail to report any damage of which he was aware.

6

Chief of Police Sult went over each of these items with Harrell at the meeting on April 10, 2007, and advised Harrell of his recommendation to terminate Harrell's employment. Harrell signed the Memorandum, indicating that he had received a copy. Harrell then asked if he could resign instead of being terminated, and Chief of Police Sult informed Harrell that he could resign up until the time that the City Manager approved the recommendation for termination. Harrell therefore elected to resign. The Sult Memorandum was placed in Harrell's personnel file. The next day, Chief of Police Sult completed a state form "Report of Separation," which was sent to the Criminal Justice Standards Division in Raleigh, indicating that Harrell had resigned and that the Gastonia Police Department would not consider Harrell for reappointment.

In September 2007, Harrell filed the present suit. Harrell filed an Amended Complaint in October 2007, specifically alleging that the "false information" in the Sult Memorandum was placed in his file to stigmatize him "with knowledge that such information would be seen by any law enforcement agency with which Harrell might seek employment."[2] At the time the suit was

---

[2] Harrell also initially alleged that Chief of Police Sult and Sergeant Turas published "false rumors" about Harrell to other police departments, although in his deposition Harrell (Continued)

7

filed, the contents of Harrell's personnel file, including the Sult Memorandum, had not been made available to the public generally or to any other person or agency, nor is there any evidence that the personnel file had been requested by any other person or agency at the time the suit was filed.

Harrell subsequently applied to return to his previous position with the Rocky Mount Police Department. As part of his application, on November 29, 2007, after the present suit had been filed, Harrell signed an Authorization for Release of Records as follows:

> In order to determine my suitability for employment, the Rocky Mount Human Resources Department is conducting a personal background investigation.
>
> I, Stacy C. Harrell, do hereby authorize any military organization, educational institutions, governmental agencies, banks and credit agencies, former and present employers, and individuals to furnish to the Human Resources Director, City of Rocky Mount, NC or her authorized agent, all available information regarding me, whether or not it is in their records. I hereby release them from civil or criminal liability whatsoever for issuing the same.
>
> I understand that all information gathered during the course of this investigation is to be held in the strictest of confidence.

---

admitted he had no evidence of Chief of Police Sult or Sergeant Turas starting or repeating any rumors about him.

8

As a result, Harrell's personnel files, including the Sult Memorandum, were provided from the Gastonia Police Department to the Rocky Mount Human Resources Department pursuant to this Authorization. Harrell was not hired by the Rocky Mount Police Department and instead returned to his hometown of Pinetops, North Carolina and was hired by the police department there. However, Harrell contends that he cannot obtain employment other than at the small department in Pinetops, and "his hopes of a significant career in law enforcement have been impaired." Appellant's Brief at 9. Other than the release to the Rocky Mount Human Resources Department, the undisputed evidence is that the Sult Memorandum has not been released to any other person or agency.

In his Complaint, Harrell originally brought claims under 42 U.S.C. § 1983 for violation of his equal protection and due process rights, as well as state law claims for libel, blacklisting, and intentional infliction of emotional distress. Harrell asserted his claims against the City of Gastonia, Chief of Police Sult, and Sergeant Turas, and sought monetary damages, expunction of the "false information" from his personnel file, and to be rehired with back pay and benefits. On Defendants' Motion for Judgment on the Pleadings, the district court dismissed Harrell's state law claims for "blacklisting" and for

9

intentional infliction of emotional distress, and also dismissed Harrell's § 1983 claim based on equal protection, but allowed Harrell's state law libel claim to go forward.  With respect to the § 1983 due process claim, the district court noted that Harrell had not sufficiently alleged a likelihood that the challenged information in his personnel file would be released to prospective employers or the public generally, but Harrell was given leave to file a Second Amended Complaint as to this claim.  Therefore, in July 2008, Harrell filed a Second Amended Complaint adding the allegation that "Harrell's personnel file, including the false information, has been disseminated and is likely to continue to be disseminated to any prospective law enforcement agency to which Harrell may apply for employment." Second Amended Complaint ¶ 41.

In September 2008, approximately two months after this Second Amended Complaint was filed, the City offered to conduct a formal "name-clearing hearing" for Harrell.  The hearing was ultimately held on October 9, 2008.  The hearing was conducted by James Palenick, City Manager for the City of Gastonia, who had not been employed with the City at the time of Harrell's suspension and recommended termination.  Under the rules adopted by the City, Harrell, who was represented by counsel, was permitted to present evidence and testimony regarding any

10

information that he felt was false or misleading in his personnel file. Harrell presented evidence and testimony regarding the four incidents in the Sult Memorandum, and both Harrell and his counsel asked questions of Chief of Police Sult regarding each of these incidents. Following the hearing, Mr. Palenick determined that none of the statements in the Sult Memorandum should be stricken or revised. Harrell was advised of this decision by letter dated October 15, 2008.

Defendants subsequently filed a Motion for Summary Judgment on the remaining § 1983 due process claim and state law libel claim. The district court granted the Motion for Summary Judgment and dismissed the remaining claims. Harrell now appeals that summary judgment determination.

II.

A.

Section 1983 provides a cause of action for public employees who are deprived of their constitutionally-protected property or liberty interests without due process of law. This court has recognized that a probationary employee "has no protected 'property' interest in his employment," but "a public employer cannot deprive a probationary employee of his 'freedom to take advantage of other employment opportunities.'" Sciolino

v. City of Newport News, 480 F.3d 642, 645 (4th Cir. 2007) (quoting Board of Regents v. Roth, 408 U.S. 564, 573 (1972)). Thus, even for probationary public employees such as Harrell, a constitutionally-protected "liberty interest is implicated by public announcement of reasons for an employee's discharge." Johnson v. Morris, 903 F.2d 996, 999 (4th Cir. 1990).

As noted in Sciolino, a § 1983 claim in this context involves a combination of two constitutional rights: "(1) the liberty to engage in any of the common occupations of life . . .; and (2) the right to due process where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Sciolino, 480 F.3d at 646 (internal quotations omitted). To establish a protected liberty interest, a plaintiff must establish that the charges against him "(1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Sciolino, 480 F.3d at 646 (citing Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 n.5 (4th Cir. 1988)).

If the public employee can establish a protected liberty interest under this framework, the employee is entitled to due process, which in this context involves a "name-clearing hearing." In this regard, the Due Process Clause "'is not a

12

guarantee against incorrect or ill-advised personnel decisions.'" Sciolino, 480 F.3d at 649 (quoting Bishop v. Wood, 426 U.S. 341, 350 (1976)). Instead, due process requires simply the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). "Due process obviously does not require more than a fair opportunity" even if the former employee's efforts to refute and clear his name are ultimately unsuccessful. Boston v. Webb, 783 F.2d 1163, 1166 (4th Cir. 1986); see also Codd v. Velger, 429 U.S. 624, 627 (1977) ("[T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name.'" (quoting Board of Regents v. Roth, 408 U.S. at 573 n.12)). Thus, ultimately, "the constitutional harm is not the defamation itself; rather it is the denial of a hearing at which the dismissed employee has an opportunity to refute the public charge." Sciolino, 480 F.3d at 649 (internal quotations omitted).

## B.

In the present case, the district court determined that summary judgment should be granted because Harrell had failed to present sufficient evidence to establish a constitutionally-protected liberty interest. This Court agrees that there are

substantial questions regarding whether Harrell has established a protected liberty interest. For example, to the extent that Harrell chose to resign rather than face possible termination for cause, this court has previously noted that a finding that an employee "was not discharged from his public employment but resigned voluntarily" would "effectively dispose[] of any liberty interest claim he might assert." Stone, 855 F.2d at 172-74 and n.5 (noting that a resignation may be voluntary "even where the only alternative to resignation is facing possible termination for cause, unless the employer actually lacked good cause to believe that grounds for termination existed"). In addition, the district court in this case concluded that Harrell had failed to present sufficient evidence of falsity as to at least three of the four incidents cited in the Sult Memorandum. Moreover, the district court also concluded that Harrell had failed to present any specific evidence regarding the City's policy for releasing the information contained in his personnel file to other agencies or to the public. With respect to the requirement that the stigmatizing information have been "made public," this court has noted that when the stigmatizing information is placed in a personnel file, "an employee must allege (and ultimately prove) a likelihood that prospective employers (i.e., employers to whom he will apply) or the public at large will inspect the file."

14

Sciolino, 480 F.3d at 650. In the present case, it is unclear under what circumstances, if any, Defendants will release the Sult Memorandum to any other person or entity going forward. Thus, as noted above, there are significant issues with respect to whether Harrell could establish a constitutionally-protected liberty interest in this case.

C.

However, we need not resolve these issues in the present case, because even if Harrell could establish a protected liberty interest, Harrell has been provided with all of the process that is due him.[3] Specifically, the undisputed evidence establishes that Harrell was initially presented with the Sult Memorandum during a meeting with the Chief of Police at the time of his suspension and recommended termination, and was ultimately provided with a full hearing before the City Manager. At the hearing before the City Manager, Harrell was represented by counsel, was allowed to present evidence and examine witnesses, and was given a full opportunity to present his side

---

[3] As noted above, the district court concluded that Harrell could not establish a constitutionally-protected liberty interest in this case. However, "[w]e are not limited to evaluation of the grounds offered by the district court to support its decision, but may affirm on any grounds apparent from the record." United States v. Smith, 395 F.3d 516, 519 (4th Cir. 2005).

15

of the story. In contesting the sufficiency of the hearing that was provided, Harrell raises two issues: (1) alleged bias of the tribunal, based on the fact that the hearing was held before the City Manager; and (2) delay in the time period between his recommended termination and the full hearing.

With respect to Harrell's allegations of bias, "[t]he due process requirement of an impartial tribunal is not violated simply because the ultimate decisionmaker was involved in an earlier stage of investigative or administrative proceedings. . . . Rather, there is a presumption that governmental officials can and will decide particular controversies conscientiously and fairly despite earlier involvement in their investigation. This presumption can only be overcome by demonstrations of 'extrajudicial' bias stemming from other influences than the investigative involvement." Boston v. Webb, 783 F.2d at 1166; see also Morris v. Danville, 744 F.2d 1041, 1045 (4th Cir. 1984) ("'To be disqualifying, personal bias must stem from a source other than knowledge a decision maker acquired from participating in a case.'" (quoting Bowens v. N.C. Dep't of Human Resources, 710 F.2d 1015, 1020 (4th Cir. 1983))). The burden is on the individual to establish that the decisionmaker was biased and that the hearing failed to provide him the minimal process constitutionally required. In

16

addition, any alleged bias must have been alleged at the time of hearing or "promptly after knowledge of the alleged disqualification," or it is waived. Satterfield v. Edenton-Chowan Board of Education, 530 F.2d 567, 575 (4th Cir. 1975).

In this case, the City Manager was not involved in any way in Harrell's termination and was not even employed by the City while Harrell was working there. Moreover, Harrell does not contend that the City Manager was personally biased against him. Instead, Harrell contends that the City Manager was biased against him because the City Manager was an employee of the City. Harrell's contention in this regard is that bias should be imputed to the City Manager because a finding by the City Manager in Harrell's favor would have, in Harrell's view, exposed the City to potential liability for damages in this litigation. However, governmental officials conducting such hearings will often be employed by the same governmental entity that made the decision being challenged, and those officials are still presumed to be fair and impartial in conducting proceedings. This presumption of impartiality applies even if the official is not only employed by the governmental entity, but was directly involved in the investigation. Harrell's general contentions are therefore insufficient to overcome the presumption that the City Manager was fair and impartial. Moreover, at the time of the

17

hearing, Harrell did not raise this objection regarding alleged bias, and therefore Harrell waived this objection by failing to raise it in a timely manner.

With respect to Harrell's allegations of delay and his contention that he was not provided with a meaningful opportunity to be heard, "due process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. at 334 (internal quotation omitted). This includes consideration of the nature of the interest, the risk of an erroneous deprivation of that interest through the procedures used, and the Government's interests. Id. For a probationary employee, the protected interest is not against the termination itself; instead, the protected interest is against the release of allegedly false, stigmatizing information without the opportunity for a name-clearing hearing.

In the present case, Harrell's name-clearing hearing was held within a few weeks after Harrell filed his Second Amended Complaint alleging a likelihood of dissemination of the allegedly false information. Significantly, there is no evidence that the challenged information was released to any entity or otherwise made public prior to the name-clearing hearing, other than the disclosure to the Rocky Mount Human Resources Department. With respect to the disclosure to Rocky

18

Mount, the Sult Memorandum was provided to the Rocky Mount Human Resources Department only after Harrell signed an Authorization for Release of Records. The language of this Authorization specifically releases all of Harrell's former employers from "civil or criminal liability whatsoever" for providing "all available information regarding me." At the time Harrell signed this Authorization, he was represented by counsel and had already filed the present lawsuit. Thus, Harrell clearly knew what his rights were based on the claims asserted in the present suit, and he knew of the presence of the Sult Memorandum in his personnel file. By its unambiguous terms, this Authorization operates as a waiver and release of Harrell's claims related to the City's disclosure of Harrell's personnel information to Rocky Mount. "[P]rocedural rights under § 1983, like other federal constitutional and statutory rights, are subject to voluntary waiver." Pee Dee Health Care, P.A. v. Sanford, 509 F.3d 204, 212 (4th Cir. 2007) (citing Town of Newton v. Rumery, 480 U.S. 386, 398 (1987) and Lake James Community Volunteer Fire Dep't v. Burke County, 149 F.3d 277 (4th Cir. 1998)). Thus, based on the Authorization, Harrell has waived and released any potential claim under § 1983 related to the Rocky Mount disclosure.

In these circumstances, where Harrell has waived and released any claims related to the disclosure to Rocky Mount,

19

and where the Sult Memorandum was not disclosed to any other entity or individual prior to the name-clearing hearing, the hearing before the City Manager provided a "meaningful opportunity to be heard," since it gave Harrell the full opportunity to present his evidence and arguments prior to any further dissemination of the Sult Memorandum. Thus, Harrell was provided with all of the process to which he was entitled.

Nevertheless, Harrell contends that he is entitled to have the Sult Memorandum removed from his personnel file. In his Opening Brief, Harrell states that:

> [t]he Court's jurisprudence suggests that due process considerations will be satisfied in a name-clearing hearing if the employee merely has the opportunity to counter the charges on the record as a supplement, not to have the false information removed. Harrell's position is that if the false information is allowed to remain in the file, his ability to supplement the record with his own views is insufficient to protect him from the effect of the false information. As has often been said, a bell cannot be un-rung. The only meaningful protection would be to prevent it from ringing in the first place by removing the false information from the file prior to dissemination.

Appellant's Brief at 27-28 n.6. However, as discussed above, due process requires the opportunity to be heard, which has now been provided. Due process does not entitle Harrell to have the information removed from his file. Therefore, under established case law, Harrell is simply not entitled to the relief he is requesting.

20

Thus, for all of the reasons noted, we conclude that summary judgment was appropriate with respect to Harrell's claim under § 1983 for alleged violation of his due process rights, and Harrell's § 1983 due process claim was properly dismissed.

III.

Harrell also brings a claim for libel per se under state law. To state a claim for libel per se, "a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897-98 (2002). "Libel per se" is "a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." Id. In an action for libel per se, malice and damages are presumed. Id. However, placing information in a personnel file does not amount to publication of that information, even if the information is passively available to others to read. See Pressley v. Continental Can Co., 39 N.C. App. 467, 250 S.E.2d 676 (1979).

21

In addition, "[a] publication of a libel, procured or invited by the plaintiff, is not sufficient to support an action for defamation." Pressley, 39 N.C. App. at 469, 250 S.E.2d at 678; see also Restatement of Torts (Second) § 583 ("[T]he consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation.").

In this case, Defendants contend on appeal that Harrell cannot establish his libel claim because everything in the Sult Memorandum was, in fact, true. Even if Harrell could establish some genuine issue of fact regarding the falsity of some part of the Sult Memorandum, Defendants further contend that Harrell has failed to establish an actual publication of the Sult Memorandum to a third party.

With respect to the "publication" of the Sult Memorandum, there is no evidence that the Sult Memorandum has been published to any individual, police agency, or entity, other than the Rocky Mount Human Resources Department. The publication to the Rocky Mount Human Resources Department was at Harrell's request and with Harrell's consent pursuant to the Authorization for Release of Records. Under North Carolina law, if the libel was "procured or invited" by the plaintiff, it cannot support an action for defamation. See Pressley, 39 N.C. App. at 469, 250 S.E.2d at 678. Thus, because Harrell requested and consented to

22

the release of his personnel file to the Rocky Mount Human Resources Department, knowing that the Sult Memorandum was contained in that file, Harrell cannot establish a claim for libel based on the disclosure of the information to the Rocky Mount Human Resources Department.

No other publication has been established by Harrell. Thus, even if some dispute remains regarding the alleged falsity of portions of the Sult Memorandum, no other publication of the Sult Memorandum has been shown, and Harrell therefore cannot establish a claim for libel under state law. As such, summary judgment was appropriate on the state law claim, and Harrell's libel claim was properly dismissed.


IV.

For all of the reasons discussed herein, the court concludes that summary judgment was properly granted with respect to Harrell's claims under 42 U.S.C. § 1983 and state libel law, and Harrell's claims were properly dismissed. The conclusion of the district court is, therefore,

AFFIRMED.