BOYCE & ISLEY, PLLC, EUGENE BOYCE, R. DANIEL BOYCE, PHILIP R. ISLEY, AND LAURA B. ISLEY, PLAINTIFFS v. ROY A. COOPER, III, THE COOPER COMMITTEE, JULIA WHITE, STEPHEN BRYANT, AND KRISTI HYMAN, DEFENDANTS

No. COA01-880

(Filed 17 September 2002)

### 1. Libel and Slander— political ads—claim sufficiently stated

The trial court erred by granting a Rule 12(b)(6) dismissal on a defamation claim arising from television ads during a political campaign where plaintiffs' complaint properly set forth the elements of a defamation claim in that there was no dispute that the statements were intentionally published to the public at large; the stated facts, if proven, would show that the advertisements contained several central errors of fact which tended to falsely imply that plaintiffs had sued the state and charged excessive fees for their work at the expense of taxpayers; these statements, viewed through the eyes of the average person and in context, are defamatory per se; the law firm of Boyce & Isley, PLLC was readily ascertainable from the reference to "Dan Boyce's law firm"; although Daniel Boyce is a public figure due to his candidacy for public office, there is no evidence that all of the plaintiffs are pubic figures; and plaintiffs alleged that defendants acted with actual malice.

## 2. Unfair Trade Practices— political ads—claim sufficiently stated

The trial court erred by granting a Rule 12(b)(6) dismissal on an unfair and deceptive practices claim arising from television ads during a political campaign where plaintiffs properly pled all of the elements for a libel per se claim and the alleged libel impugned plaintiffs in their profession by accusing them of unethical business practices. There are no compelling grounds to distinguish defamatory remarks concerning one's trade or profession made during the course of a political campaign from those made in some other forum. It will be plaintiff's burden to show actual injury as the case progresses.

## 3. Evidence— judicial notice—state board action—newspaper articles

The trial court did not err in an action for defamation and unfair trade practices arising from a political campaign by declining to take judicial notice of an order by the Board of Elections dismissing plaintiffs' complaint or of certain newspaper articles. Even if judicial notice of the Board's action was proper, the Board's conclusion that defendants' political advertisement did not constitute criminal election activity did not provide a bar to plaintiffs' tort claims against defendants. None of the newspaper advertisements were relevant to testing the legal sufficiency of plaintiffs' complaint or provided the basis for a complete defense.

Appeal by plaintiffs from order entered 6 April 2001 by Judge James C. Spencer, Jr., in Wake County Superior Court. Heard in the Court of Appeals 23 April 2002.

*Boyce & Isley, PLLC, by G. Eugene Boyce, R. Daniel Boyce, Philip R. Isley, and Laura B. Isley, pro se, plaintiff appellants.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jim W. Phillips, Jr., and David Kushner, and Smith Helms Mulliss & Moore, L.L.P., by Alan W. Duncan, for defendant appellees.*

TIMMONS-GOODSON, Judge.

The law firm of Boyce & Isley, PLLC, and its member attorneys G. Eugene Boyce, R. Daniel Boyce, Philip R. Isley and Laura B. Isley (collectively, "plaintiffs") appeal from an order of the trial court dis-

missing plaintiffs' complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. For the reasons set forth herein, we reverse in part the order of the trial court.

The facts relevant to this appeal are as follows: On 2 November 2000, plaintiffs filed a complaint with the State Board of Elections. The complaint alleged that a political advertisement sponsored by the campaign of Roy Cooper, the Democratic nominee for the Office of Attorney General of North Carolina, violated section 163-274(8) of the North Carolina General Statutes, which prohibits "any person to publish . . . derogatory reports with reference to any candidate in any primary or election, knowing such report to be false or in reckless disregard of its truth or falsity[.]" N.C. Gen. Stat. § 163-274(8) (2001).

During the pendency of the action before the State Board of Elections, plaintiffs filed a similar complaint in Wake County Superior Court alleging that Roy Cooper, along with the Cooper Committee (collectively, "defendants") published a false and fraudulent political television advertisement during the North Carolina election campaign for the Office of Attorney General. Plaintiffs alleged that the advertisement defamed R. Daniel Boyce ("Dan Boyce"), the Republican nominee for the Office of Attorney General, as well as the member attorneys of the Boyce & Isley law firm. The complaint recited verbatim the content of the advertisement at issue, the audio portion of which is reproduced here as follows:

> I'm Roy Cooper, candidate for Attorney General, and I sponsored this ad.
>
> . . . .
>
> Dan Boyce—his law firm sued the state, charging $28,000 an hour in lawyer fees to the taxpayers.
>
> The Judge said it shocks the conscience.
>
> Dan Boyce's law firm wanted more than a police officer's salary for each hour's work.
>
> Dan Boyce, wrong for Attorney General.

Plaintiffs alleged that defendants' publication of the above-stated advertisement was defamatory *per se* and constituted unfair and deceptive trade practices. Further, plaintiffs accused defendants of conspiring to violate statutory section 163-274(8), referenced *supra*,

and requested a declaratory judgment regarding defendants' alleged violation of such statute.

On 20 December 2000, the State Board of Elections dismissed plaintiffs' complaint. On 6 April 2001, the trial court also granted defendants' motion to dismiss plaintiffs' complaint on all claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. From this order, plaintiffs appeal.

---

On appeal, plaintiffs bring forth two assignments of error, arguing that the trial court erred in dismissing their claims against defendants for defamation and for unfair and deceptive trade practices. By cross-appeal, defendants assign error to the trial court's refusal to take judicial notice of the order of the State Board of Elections dismissing plaintiffs' complaint. We examine plaintiffs' and defendants' arguments in turn.

### I. Plaintiffs' Appeal

[1] In their first assignment of error, plaintiffs contend that the trial court erred by dismissing their claim for defamation. Plaintiffs argue that their complaint states a valid claim for defamation against defendants upon which relief may be granted. We agree.

A motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure tests the legal sufficiency of the complaint. *See* N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2001); *Fuller v. Easley*, 145 N.C. App. 391, 397-98, 553 S.E.2d 43, 48 (2001). When ruling on a motion to dismiss, "the trial court must take the complaint's allegation[s] as true and determine whether they 'are sufficient to state a claim upon which relief may be granted under some legal theory.' " *Id.* (quoting *Taylor v. Taylor*, 143 N.C. App. 664, 668, 547 S.E.2d 161, 164 (2001)). The ultimate issue on a motion to dismiss is not " 'whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Johnson v. Bollinger*, 86 N.C. App. 1, 4, 356 S.E.2d 378, 381 (1987) (quoting *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758, *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986)). Thus, a claim should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Garvin v. City of Fayetteville*, 102 N.C. App. 121, 123, 401 S.E.2d 133, 134-35 (1991).

BOYCE & ISLEY, PLLC v. COOPER

[153 N.C. App. 25 (2002)]

In the instant case, plaintiffs' complaint set forth a claim for defamation against defendants, including libel *per se* and slander *per se*. In order to recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person. *See Tyson v. L'eggs Products, Inc.*, 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987). There is no dispute in the instant case that the statements made by defendants were intentionally published to the public at large. Therefore, we address the first three elements of plaintiffs' defamation claim, namely that the statements were (1) false, (2) defamatory, and (3) of or concerning plaintiffs. We therefore turn to the facts as alleged in plaintiffs' complaint.

In support of the first element for defamation, that of falsity, plaintiffs argue that their complaint sets forth specific facts that, if true, demonstrate that defendants' advertisement misstated several fundamental facts. Specifically, the complaint alleged that, contrary to the stated facts of the advertisement, "Dan Boyce's law firm" did not exist in November of 1997, the time period during which, according to the advertisement, the law firm sued the state. Further, the complaint denied that "Dan Boyce's law firm" had ever "charg[ed] $28,000 an hour in lawyer fees[,]" as stated in the advertisement.

We conclude that plaintiffs set forth sufficient specific facts to support their claim that the statements made by defendants were false. If proven, the above-stated facts would show that defendants' advertisement contained several central errors of fact, publication of which tended to falsely imply that plaintiffs had sued the state and demanded excessive fees for their work at the expense of taxpayers. We next determine whether plaintiffs have set forth sufficient facts alleging defamation.

In North Carolina, the term defamation applies to the two distinct torts of libel and slander. Libel *per se* is "a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Phillips v. Winston-Salem/Forsyth County Bd. of Educ.*, 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994), *disc. review denied*, 340 N.C. 115, 456 S.E.2d 318 (1995). Slander *per se* is "an oral communication to a third party which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the

plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." *Id.* When the defamatory words are spoken with an intent that the words be reduced to writing, and the words are in fact written, the publication is both libelous and slanderous. *See Clark v. Brown,* 99 N.C. App. 255, 261, 393 S.E.2d 134, 137, *disc. review denied,* 327 N.C. 426, 395 S.E.2d 675 (1990).

"[F]alse words imputing to a merchant or business man conduct derogatory to his character and standing as a business man and tending to prejudice him in his business are actionable, and words so uttered may be actionable *per se.*" *Badame v. Lampke,* 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955); *see also Ausley v. Bishop,* 133 N.C. App. 210, 214-15, 515 S.E.2d 72, 76 (1999) (holding that, where the plaintiff moved for summary judgment on the defendant's counterclaim for slander *per se,* there was sufficient evidence to support the defendant's claim where the defamatory statements made by the plaintiff had the capacity to adversely affect the defendant in his profession). In an action for libel or slander *per se,* malice and damages are deemed presumed by proof of publication, with no further evidence required as to any resulting injury. *See Andrews v. Elliot,* 109 N.C. App. 271, 274, 426 S.E.2d 430, 432 (1993).

Plaintiffs alleged in their complaint that the statements by defendants that "Dan Boyce's law firm" had "sued the state" and "charg[ed]" the taxpayers an hourly rate greater "than a police officer's salary" plainly and falsely accused plaintiffs of unethical billing practices in their profession. The complaint alleged that defendants' advertisement was defamatory *per se* in that it tended to "disparage Boyce & Isley, PLLC and its member attorneys' professional reputation and honesty in billing clients, and states that they engage in unethical conduct[,]" thereby depriving plaintiffs of the "respect, confidence and esteem essential to Plaintiffs' professional status in commerce and the business community." Further, plaintiffs alleged that such remarks were published in reckless disregard of their truth or falsity. Thus, argue plaintiffs, the complaint properly stated sufficient facts to support the claim that defendants' advertisement was defamatory.

Defendants argue that the advertisement was not defamatory in that the statements made therein are "reasonably susceptible of a non-defamatory interpretation." Defendants correctly note that, in order to be libelous *per se,* defamatory words "must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold

him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided." *Flake v. News Co.*, 212 N.C. 780, 786, 195 S.E. 55, 60 (1938). Whether a publication is libelous *per se* is a question of law for the court. *See Ellis v. Northern Star Co.*, 326 N.C. 219, 224, 388 S.E.2d 127, 130 (1990). When examining an allegedly defamatory statement, the court must view the words within their full context and interpret them "as ordinary people would understand" them. *Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 319, 312 S.E.2d 405, 409, *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984); *Flake*, 212 N.C. at 786, 195 S.E. at 60.

Defendants contend that the average person is familiar with the concept of contingency fees in the context of large class-action lawsuits and understands that attorneys are sometimes generously compensated for their participation in such suits. Defendants therefore argue that their assertion that "Dan Boyce's law firm" "charg[ed]" "more [per hour] than a policeman's salary" did not imply unethical conduct by plaintiffs or otherwise impugn them in their profession. On the contrary, defendants contend that such statements imply that plaintiffs are "highly-skilled, top-notch" attorneys who "play[] for big rewards[.]" According to defendants, plaintiffs' defamatory claim cannot stand without resorting to extrinsic facts and innuendo, thus rendering it "susceptible of a non-defamatory interpretation." We disagree.

Although we agree with defendants that "it is not libelous *per se* as a matter of law to state that an attorney sought a very large fee—not in the context of a $150 million class action lawsuit[,]" such is not the case here. Defendants' advertisement did not state that plaintiffs *sought* a very large fee—it stated that plaintiffs *charged* a very large fee. There is an important distinction between these two words, of which defendants, in crafting the text of their advertisement, were undoubtedly aware. The word "sought" or "seeking" indicates that plaintiffs submitted their request for compensation to the court. The fact that plaintiffs *sought* extraordinary compensation, moreover, does not imply that plaintiffs actually *received* such compensation. In contrast, the term "charged" or "charging" suggests that, not only did plaintiffs actually receive such compensation at the taxpayers' expense, they did so without deference to the court. Contrary to defendants' argument, we do not believe the average layperson to be so familiar with the intricacies of class-action lawsuits as to know that the courts must approve of attorney compensation in such suits.

Further, defendants' advertisement did not indicate that the case for which plaintiffs purportedly "charged" the taxpayers exorbitant fees was a large class-action lawsuit. Nor did it mention the term "contingency fees." Without this vital information to lend context to the facts as portrayed in the advertisement, the average viewer could not properly evaluate the claims being made by defendants against plaintiffs. Instead, the average viewer was left solely with the following information about plaintiffs: that they (1) sued the State; (2) charged (and therefore received) $28,000 per hour to taxpayers to do so; (3) that this sum represented more than a policeman's annual salary; and (4) that a judge had pronounced that plaintiffs' behavior "shocked the conscience." One does not have to "read between the lines" to discover the advertisement's defamatory content. *See Renwick*, 310 N.C. at 318, 312 S.E.2d at 409.

We hold that the allegedly false statements, when viewed through the eyes of an average person and in the context of the advertisement as a whole, are defamatory *per se*. Defendants' statements directly maligned plaintiffs in their profession by accusing them of unscrupulous and avaricious billing practices. Contrary to defendants' contentions, no innuendo or reference to ethical rules governing attorney conduct is necessary to conclude that the advertisement charged plaintiffs with committing contemptible business practices. *See Ellis*, 326 N.C. at 224, 388 S.E.2d at 130 (holding that the language in a letter by the defendant company, taken in the context of the entire letter, was defamatory, in that it accused the plaintiff company of committing an unauthorized act and so impeached the plaintiff company in its trade). Nor do we conclude that such accusations were ambiguous. We doubt that defendants intended their advertisement as a compliment to plaintiffs' skills and abilities as "top-notch" attorneys, and we do not conclude that the average person would otherwise interpret the advertisement in a non-derogatory fashion. *See McKimm v. Ohio Elections Comm.*, 89 Ohio St. 3d 139, 146, 729 N.E.2d 364, 372 (2000) (holding that, where a cartoon published by a candidate for political office unambiguously depicted the opposing candidate engaging in unlawful and unethical activity, such cartoon was not reasonably susceptible to more than one meaning and was thus defamatory), *cert. denied*, 531 U.S. 1078, 148 L. Ed. 2d 674 (2001).

Having determined that plaintiffs' complaint properly pled specific facts supporting the first two elements of defamation, we now examine whether the complaint supports the third element, namely that the defamatory statement was "of or concerning the plaintiffs." It

is well established that "[i]n order for defamatory words to be action-able, they must refer to some ascertained or ascertainable person and that person must be the plaintiff. If the words used contain no reflection on any particular individual, no averment can make them [defamatory]." *Arnold v. Sharpe*, 296 N.C. 533, 539, 251 S.E.2d 452, 456 (1979). For example, a defamatory statement accusing "someone" in a group of nine persons of misconduct will not support an action for defamation by a member of that group. *See Chapman v. Byrd*, 124 N.C. App. 13, 17, 475 S.E.2d 734, 737 (1996), *disc. review denied*, 345 N.C. 751, 485 S.E.2d 50 (1997). Where a statement defames a small group or class of persons in its entirety, however, any member of that class may pursue an action for defamation, despite the fact that the statement fails to specifically identify that particular individual. *See Carter v. King*, 174 N.C. 549, 553, 94 S.E. 4, 6 (1917) (holding that one of the members of an eleven-member jury could maintain a cause of action for libel where the defamatory statement imputed misconduct to the entire group); *see generally* Debra T. Landis, Annotation, *Defamation of Class or Group as Actionable by Individual Member*, 52 A.L.R. 4th 618 (1987) (discussing claims brought by individual members of a defamed group or class).

In the instant case, there is no dispute that the political advertisement reproduced in plaintiffs' complaint specifically identified the individual plaintiff R. Daniel Boyce. Defendants contend, however, that the reference to "Dan Boyce's law firm" in the advertisement does not identify the law firm of Boyce & Isley or its member attorneys. Thus, argue defendants, any defamatory statements contained in the advertisement did not concern plaintiffs other than R. Daniel Boyce. We disagree. The fact that the advertisement did not specifically name each present plaintiff does not bar their suit. *See Carter*, 174 N.C. at 552, 94 S.E. at 6. By claiming that "Dan Boyce's law firm" had committed unethical business practices, defendants maligned each attorney in the firm, of which there are only four. Moreover, we conclude that identification of the law firm of Boyce & Isley, PLLC, was readily ascertainable from the reference to "Dan Boyce's law firm." We therefore conclude that plaintiffs' complaint properly supported the fact that the defamatory statements were "of or concerning" plaintiffs.

Defendants argue that plaintiffs cannot succeed on their claim for defamation because they are public figures, and because defendants published their statements in the course of a political campaign. Defendants correctly note that a public figure may not prevail on a

claim for defamation unless he proves that the defamatory state-
ments were made with actual malice. *See, e.g.*, *New York Times Co.
v. Sullivan*, 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706 (1964); *Gaunt
v. Pittaway*, 139 N.C. App. 778, 785, 534 S.E.2d 660, 664-65 (2000),
*cert. denied*, 534 U.S. 950, 151 L. Ed. 2d 261 (2001). A statement is
made with actual malice where it is published "with knowledge that
it was false or with reckless disregard of whether it was false or not."
*New York Times Co.*, 376 U.S. at 279-80, 11 L. Ed. 2d at 706. "Under
North Carolina law, an individual may become a limited purpose pub-
lic figure 'by his purposeful activity amounting to a thrusting of his
personality into the "vortex" of an important public controversy.' "
*Gaunt*, 139 N.C. App. at 786, 534 S.E.2d at 665 (quoting *Taylor v.
Greensboro News Co.*, 57 N.C. App. 426, 435, 291 S.E.2d 852, 857
(1982), *disc. review denied*, 307 N.C. 459, 298 S.E.2d 385 (1983)).
Defendants offer no conclusive evidence, however, that all of the
present plaintiffs are public figures, limited purpose or otherwise.

Furthermore, although plaintiff R. Daniel Boyce certainly quali-
fies as a public figure due to his candidacy for public office, plaintiffs
alleged in their complaint that defendants acted with actual malice.
Among other allegations, plaintiffs stated that they repeatedly
informed defendants as to the alleged falsity of their statements, but
that defendants continued to publish the offending advertisement.
Moreover, contrary to defendants' arguments, "the actual-malice
standard is not an impenetrable shield for the benefit of those who
engage in false speech about public figures." *McKimm*, 89 Ohio St. 3d
at 147, 729 N.E.2d at 373 (holding that there was sufficient evidence
of record at trial to support a decision by the Ohio Elections
Commission reprimanding a successful candidate for political office
for his false and misleading political cartoon depicting the opposing
candidate engaging in unethical behavior). The context of a political
campaign does not alter the fact that

> "false speech, even political speech, does not merit constitutional
> protection if the speaker knows of the falsehood or recklessly
> disregards the truth." "The use of a known lie as a tool is at once
> at odds with the premises of democratic government and with the
> orderly manner in which economic, social, or political change is
> to be effected. Hence the knowingly false statement and the false
> statement made with reckless disregard of the truth, do not enjoy
> constitutional protection."

*Id.* (quoting *Garrison v. Louisiana*, 379 U.S. 64, 75, 13 L. Ed. 2d 125,
133 (1964)) (citations omitted).

The allegations in plaintiffs' complaint sufficiently pled their claim of defamation by defendants to overcome a Rule 12(b)(6) motion to dismiss. *See Dockery v. Florida Democratic Party*, 719 So.2d 9, 11 (Fla. Dist. Ct. App. 1998) (holding that, where the husband of a candidate for political office filed a claim for defamation based on remarks made by the opposing candidate during the campaign, such complaint sufficiently alleged a cause of action for defamation such as to survive the defendants' motion to dismiss); *see also Pritt v. Republican National Committee*, 210 W. Va. 446, 453, 557 S.E.2d 853, 863 (2001) (holding that the plaintiff, an unsuccessful candidate for the office of governor, presented sufficient evidence to support her defamation claim for statements made about the plaintiff during the political campaign such that the trial court erred in granting summary judgment to the defendants). Whether or not plaintiffs may ultimately prevail on these claims is not a matter before this Court. *See Johnson*, 86 N.C. App. at 4, 356 S.E.2d at 381; *see also Dockery v. Florida Democratic Party*, 799 So.2d 291, 297 (Fla. Dist. Ct. App. 2001) (holding that the trial court correctly granted summary judgment to the defendants where the plaintiff failed to present sufficient evidence of his defamation claim). Because plaintiffs' complaint properly set forth the elements of a defamation claim, the trial court erred in dismissing this claim. *See Andrews*, 109 N.C. App. at 275, 426 S.E.2d at 432. We therefore turn to plaintiffs' next assignment of error.

**[2]** In their second assignment of error, plaintiffs contend that the trial court erred by dismissing their claim for unfair and deceptive trade practices. Plaintiffs argue that their defamation claim, if proven, properly supports a claim for unfair and deceptive trade practices by defendants. We agree.

At the outset, we note again the standard for granting a motion to dismiss. Plaintiffs' complaint would only be properly dismissed if it "[f]ail[ed] to state a claim upon which relief can be granted[.]" N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).

A claim under section 75-1.1 of the North Carolina General Statutes requires proof of three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant. *See Rawls & Assocs. v. Hurst*, 144 N.C. App. 286, 293, 550 S.E.2d 219, 224, *disc. review denied*, 354 N.C. 574, 559 S.E.2d 183 (2001). "[A] libel *per se* of a type impeaching a party in its business activities is an unfair or deceptive act in or affecting commerce in violation of N.C.G.S. § 75-1.1, which will justify

an award of damages . . . for injuries proximately caused." *Ellis*, 326 N.C. at 226, 388 S.E.2d at 131. Similarly, slander *per se* may constitute a violation of section 75-1.1. *See Ausley*, 133 N.C. App. at 216, 515 S.E.2d at 77. To recover, a plaintiff must have suffered actual injury as a proximate result of the deceptive statement or misrepresentation. *See Ellis*, 326 N.C. at 226, 388 S.E.2d at 131; *Ausley*, 133 N.C. App. at 216-17, 515 S.E.2d at 77.

We observe that, under section 75-1.1(b), the term "commerce" "includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b) (2001). Thus, professional services rendered by an attorney in the course of his business are exempt under the statute and may not form the basis of an unfair or deceptive trade practices claim. *See Sharp v. Gailor*, 132 N.C. App. 213, 217, 510 S.E.2d 702, 704 (1999). We do not read section 75-1.1(b), however, to preclude an attorney from *pursuing* an unfair and deceptive trade practices claim. Thus, the mere fact that plaintiffs are learned professionals whose business activities defendants maligned does not remove plaintiffs' claim for defamation outside of the scope of section 75-1.1.

As we have determined, plaintiffs in the instant case properly pled all of the elements for a libel *per se* claim. Moreover, the alleged libel impugned plaintiffs in their profession by accusing them of unethical business practices. Plaintiffs' complaint alleged that such behavior by defendants constituted unfair and deceptive trade practices and caused actual injury to plaintiffs. Thus, plaintiffs' complaint stated a claim for unfair and deceptive trade practices upon which relief may be granted. *See Ellis*, 326 N.C. at 226, 388 S.E.2d at 131 (holding that there was sufficient evidence presented to the jury to properly support an unfair and deceptive trade practices claim where such claim was based on libel *per se* impeaching the plaintiff in its business); *Ausley*, 133 N.C. App. at 216, 515 S.E.2d at 77 (holding that there was a sufficient forecast of evidence at summary judgment to properly support a claim under Chapter 75 where such claim was based upon slander *per se*).

Defendants argue that, as the objectionable statements were published during a political campaign, section 75-1.1 cannot apply. Defendants assert that such statements can have no effect on the consuming public, or the plaintiffs' business activities, and that the statements therefore are not within the purview of section 75-1.1. We do not agree.

BOYCE & ISLEY, PLLC v. COOPER

[153 N.C. App. 25 (2002)]

We perceive no compelling grounds, nor do defendants advance such, to distinguish defamatory remarks concerning one's trade or profession made during the course of a political campaign from those made in some other forum. As noted *supra*, it is well established that a defamatory statement impeaching a business man in his trade or profession may constitute an unfair or deceptive act affecting commerce. See *Ellis*, 326 N.C. at 226, 388 S.E.2d at 131; *Ausley*, 133 N.C. App. at 216, 515 S.E.2d at 77. We disagree with defendants' argument that the context of a political campaign substantially alters the impact of such statements upon commerce. We note that the defamatory remarks published in *Ellis* and *Ausley* were published to a limited number of people. See *Ellis*, 326 N.C. at 222, 388 S.E.2d at 129 (defamatory letter published to "several buyers"); *Ausley*, 133 N.C. App. at 215, 515 S.E.2d at 76 (defamatory statement published to "several clients"). In contrast, plaintiffs alleged in the instant case that defendants' statements were published to "well over 1 million people[.]" If defamatory remarks concerning one's trade or profession affect commerce, as has been held, we fail to see how the context of a political campaign, with its wide-spread broadcast of such statements by multiple media, can *lessen* rather than *heighten* the impact upon commerce.

Because plaintiffs' complaint properly stated the elements of a claim for unfair and deceptive trade practices upon which relief may be granted, the trial court erred in dismissing this claim. It will be plaintiffs' substantial burden, as this case progresses, to provide sufficient evidence to support their claim that they have suffered actual injury as a result of defendants' actions. At this juncture, however, they are entitled to proceed with their claims.

We now examine defendants' assignment of error on appeal.

## II. Defendants' Appeal

[3] By cross-appeal, defendants contend that the trial court erred by declining to take judicial notice of the order by the Board of Elections ("the Board") dismissing plaintiffs' complaint. Defendants also argue that the trial court should have taken judicial notice of various newspaper articles concerning the election campaign. Defendants argue that the findings and conclusions made by the Board, as well as the newspaper articles, provide an absolute defense to plaintiffs' claims. By failing to take judicial notice of such materials, argue defendants, the trial court deprived defendants of alternative bases supporting their motion to dismiss.

Rule 201 of the North Carolina Rules of Evidence governs judicial notice of adjudicative facts. *See* N.C. Gen. Stat. § 8C-1, Rule 201 (2001). Rule 201 does not address, however, judicial notice of legislative facts. *See id.*, commentary. Adjudicative facts are those involving the immediate parties, including "who did what, where, when, how, and with what motive or intent." *Id.*, commentary. "Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." *Id.* Legal conclusions are not the proper subject of judicial notice. *See Glenn-Robinson v. Acker,* 140 N.C. App. 606, 634, 538 S.E.2d 601, 620 (2000), *disc. review denied,* 353 N.C. 372, 547 S.E.2d 811 (2001).

In the instant case, defendants assert that, had the trial court taken judicial notice of the order of the Board of Elections, such order would have provided an unconditional affirmative defense to plaintiffs' claims. Specifically, defendants contend that the Board's order conclusively establishes that (1) defendants acted in good faith in publishing the advertisement and (2) the statements in the advertisement were true. We disagree.

The Board concluded that defendants' political advertisement did not "constitute criminal election activity under GS § 163-274(8)." As noted above, legal conclusions are legislative facts, and as such, are not properly subject to judicial notice under Rule 201. The trial court therefore correctly declined to take judicial notice of the Board's conclusion that plaintiffs did not violate section 163-274(8). Further, contrary to defendants' assertions, none of the Board's findings conclusively establishes an affirmative defense to plaintiffs' claims. Thus, even if judicial notice were proper, the Board's order, concluding that defendants did not commit criminal election activity, would not constitute an absolute bar to plaintiffs' tort claims against defendants. For example, the Board did not specifically find that defendants acted in good faith in publishing their advertisement. Rather, the Board found that defendants "asserted to the Board" that they acted in good faith. Similarly, the Board found that plaintiffs asserted that defendants acted "intentionally or recklessly." The Board's mere recital of arguments made by the parties before the Board does not resolve the issue of defendants' good faith such as to form the basis for collateral estoppel—it simply establishes that the parties made such arguments.

The Board's findings likewise fail to conclusively establish that defendants' advertisement, in its entirety, was true. The Board found

that, during the election campaign for the Office of Attorney General, "R. Daniel Boyce and others on his behalf had asserted that he was involved in all the tax cases that involved the Boyce family lawyers." The Board therefore concluded that, "[i]n view of R. Daniel Boyce's own campaign use of all the tax cases handled both by himself, G. Eugene Boyce, and other Boyce family members as positive campaign material[,]" defendants committed no illegal campaign activity. These findings by the Board suggest that it decided the case based on principles of fairness and estoppel rather than on the actual truth or falsity of the claims made in defendants' advertisement. Such findings and conclusions do not establish that all of the statements in defendants' advertisement were true. For example, plaintiffs alleged in their complaint that the Boyce & Isley law firm did not exist in 1997 and therefore could not have litigated the tax case for which, according to defendants' advertisement, it charged a fee of $28,000.00 per hour. Nothing in the Board's order addressed the existence or non-existence of the Boyce & Isley law firm. In fact, nothing in the Board's findings established that R. Daniel Boyce had litigated the tax case, only that he had asserted in his campaign materials that "he was involved" in such. Because the Board's findings do not conclusively establish that the statements in defendants' advertisement were true, such findings cannot serve as the basis for an absolute defense to plaintiffs' claims. We hold that the trial court did not err in declining to take judicial notice of the order by the Board of Elections.

We also conclude that the trial court did not err in refusing to take judicial notice of various newspaper articles submitted by defendants, none of which was relevant to testing the legal sufficiency of plaintiffs' complaint or provided the basis for a complete defense to plaintiffs' claims. We therefore overrule defendants' assignment of error.

In conclusion, plaintiffs' complaint presented a sufficient claim upon which relief could be granted for defamation and unfair and deceptive trade practices at the Rule 12(b)(6) stage. We therefore hold that the trial court erred in dismissing plaintiffs' complaint pursuant to Rule 12(b)(6). We further hold that the trial court did not err in declining to take judicial notice of extraneous matters. The order of the trial court is therefore

Affirmed in part and reversed in part.

Judges GREENE and McGEE concur.