IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-827

 Filed: 17 March 2020

Buncombe County, No. 18 CV 5532

LISA M. TAUBE, Plaintiff,

 v.

TAMARA “TAMMY” HOOPER, individually, and in her official capacity as Chief of
Police for the City of Asheville; and CITY OF ASHEVILLE, Defendants.

 Appeal by plaintiff from order entered 21 May 2019 by Judge W. Erwin

Spainhour in Buncombe County Superior Court. Heard in the Court of Appeals

19 February 2020.

 John C. Hunter for plaintiff.

 McGuire, Wood & Bissette, PA, by Joseph P. McGuire, for defendants.

 ARROWOOD, Judge.

 Lisa M. Taube (“plaintiff”) appeals from the trial court’s dismissal of her

defamation claims for failure to state a claim upon which relief can be granted,

pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2019). For the following reasons,

we affirm.

 I. Background

 This case involves statements by Asheville Police Department Chief Tammy

Hooper (“the Department” and “defendant Hooper”) and the City of Asheville
 TAUBE V. HOOPER

 Opinion of the Court

concerning plaintiff’s response to an incident wherein one of the officers she

supervised used excessive force to arrest an individual. As a result of these

statements, plaintiff filed suit against defendants, asserting claims of defamation and

intentional infliction of emotional distress. The allegations in plaintiff’s complaint

are summarized as follows.

 Plaintiff was employed as a Sergeant with the Department from 2005 until her

resignation on 31 August 2018. On the night of 24 August 2017, plaintiff was the

supervisor on duty for the Department’s Downtown Unit. During her shift, plaintiff

was notified that Officer Christopher Hickman, one of her reporting officers, had used

physical force incident to the arrest of an individual. Shortly after midnight, plaintiff

arrived at the scene and took statements from Officer Hickman and the arrestee.

These statements were recorded on her body-worn camera and uploaded to the

Department’s computer server later that night. Plaintiff also arranged for

photographs to be taken of the arrestee to document potential injuries.

 Because plaintiff was soon due to depart on a scheduled two-week family

vacation to Michigan, which included a wedding at 8:00 p.m. later that day, she

concluded her initial investigation and reporting at this point and forwarded the

information she had gathered with a reminder of her planned leave to her supervisors

and reporting officers. She notified them that she had initiated the process of creating

 -2-
 TAUBE V. HOOPER

 Opinion of the Court

the “Blue Team Report,” the reporting procedure for use of force incidents required

by Department policy. Defendant then departed on her scheduled vacation.

 On 25 August 2017, the Department suspended the Blue Team Report

procedure and launched a Professional Standards Section administrative

investigation into the arrest, use of force, and Officer Hickman’s conduct. This

investigation relieved plaintiff of further responsibility in preparing the Blue Team

Report.

 Months later, Officer Hickman’s use of force became the subject of local media

attention and public outcry as a perceived instance of police brutality. On

28 February 2018, the Asheville Citizen-Times first brought the incident to the

public’s attention by acquiring and publishing the bodycam footage of the arrest. This

news coverage made the Department, defendant Hooper, and the City of Asheville

the subject of considerable public criticism. Other information emerged tending to

further subject defendant Hooper to criticism for her months-delayed response to the

incident.

 As the news story continued to develop, on 5 March 2018 the City of Asheville

released a written statement to the public concerning the incident:

 That Supervisor, however, despite being told by Hickman
 that he had struck [the arrestee] in the head with his
 Taser, and despite [the arrestee] saying that he was
 choked, did not immediately forward any information or
 complete notes of these interviews with Hickman and [the
 arrestee], and did not review the body camera footage that

 -3-
 TAUBE V. HOOPER

 Opinion of the Court

 evening. Because of conduct related to this incident, that
 Supervisor ultimately received discipline for
 unsatisfactory performance and was ordered to undergo
 additional training.

 Later that day, defendant Hooper gave an interview to a local television

station. She made the following statement:

 There were some issues with the Supervisor who showed
 up to review the incident. Our expectations, our policy is
 pretty clear about what the Supervisor’s responsibilities
 are, those are laid out pretty clearly in the [written
 statement] that was issued. All those things didn’t happen.
 And so I think that the intention of the Supervisor was to
 do a more thorough review later or something to that effect,
 but that’s not acceptable. So the Supervisor dropped the
 ball on the response to that, and was disciplined in
 response.

 Based on these statements, local journalists and the public soon discovered

plaintiff’s identity as “the Supervisor.” Ever since these statements, plaintiff has

been subjected to public scorn and hateful electronic communications.

 Plaintiff resigned from the Department on 31 August 2018. Pursuant to her

resignation, defendant Hooper submitted a legally mandated “Form F-5, Affidavit of

Separation” to the North Carolina Criminal Justice Education and Training

Standards Commission. On the form, defendant Hooper checked a box indicating

that “[the Department] IS aware of any investigation(s) in the last 18 months

concerning potential criminal action or potential misconduct by this officer.”

(emphasis in complaint). The Affidavit of Separation form is a document that is

 -4-
 TAUBE V. HOOPER

 Opinion of the Court

customarily viewed by law enforcement entities in determining whether to hire a

candidate for a law enforcement position.

 On 9 May 2019, defendants moved to dismiss plaintiff’s claims pursuant to

Rule 12(b)(6) for failure to state a claim upon which relief could be granted. The trial

court granted this motion and dismissed plaintiff’s claims. Plaintiff timely appealed.

 II. Discussion

 Plaintiff argues that the trial court erred in dismissing her claims of libel and

slander per se pursuant to Rule 12(b)(6) for failure to state a claim upon which relief

can be granted.1 For the following reasons, we disagree.

 A. Standard of Review

 “We review appeals from dismissals under Rule 12(b)(6) de novo.” Arnesen v.

Rivers Edge Golf Club & Plantation, Inc., 368 N.C. 440, 448, 781 S.E.2d 1, 8 (2015)

(citation omitted).

 Dismissal of an action under Rule 12(b)(6) is appropriate
 when the complaint fail[s] to state a claim upon which
 relief can be granted. [T]he well-pleaded material
 allegations of the complaint are taken as true; but
 conclusions of law or unwarranted deductions of fact are
 not admitted. When the complaint on its face reveals that
 no law supports the claim, reveals an absence of facts
 sufficient to make a valid claim, or discloses facts that
 necessarily defeat the claim, dismissal is proper.

 1 Plaintiff has abandoned any challenge to the trial court’s dismissal of her other claims by
failing to argue them in her appellate briefs. N.C.R. App. P. 28(a) (2020) (“Issues not presented and
discussed in a party’s brief are deemed abandoned.”).

 -5-
 TAUBE V. HOOPER

 Opinion of the Court

Id. at 448, 781 S.E.2d at 7-8 (internal quotation marks and citations omitted).

 B. Claims of Libel Per Se and Slander Per Se

 “In order to recover for defamation, a plaintiff must allege and prove that the

defendant made false, defamatory statements of or concerning the plaintiff, which

were published to a third person, causing injury to the plaintiff’s reputation.” Tyson

v. L’Eggs Prods., Inc., 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987) (citing Hall

v. Publishing Co., 46 N.C. App. 760, 266 S.E.2d 397 (1980)).

 The term defamation covers two distinct torts, libel and
 slander. In general, libel is written while slander is oral.
 Libel per se is a publication which, when considered alone
 without explanatory circumstances: (1) charges that a
 person has committed an infamous crime; (2) charges a
 person with having an infectious disease; (3) tends to
 impeach a person in that person’s trade or profession; or (4)
 otherwise tends to subject one to ridicule, contempt or
 disgrace. Slander per se is an oral communication to a third
 person which amounts to (1) an accusation that the
 plaintiff committed a crime involving moral turpitude; (2)
 an allegation that impeaches the plaintiff in his trade,
 business, or profession; or (3) an imputation that the
 plaintiff has a loathsome disease. When defamatory words
 are spoken with the intent that the words be reduced to
 writing, and the words are in fact written, the publication
 is both slander and libel.

Phillips v. Winston-Salem/Forsyth Cty. Bd. of Educ., 117 N.C. App. 274, 277-78, 450

S.E.2d 753, 756 (1994) (internal quotation marks, alterations, and citations omitted).

 In reviewing whether a plaintiff has stated a claim of defamation per se, the

allegedly defamatory statement “alone must be construed, stripped of all

 -6-
 TAUBE V. HOOPER

 Opinion of the Court

insinuations, innuendo, colloquium and explanatory circumstances. The [statement]

must be defamatory on its face within the four corners thereof.” Renwick v. News &

Observer Pub. Co., 310 N.C. 312, 318-19, 312 S.E.2d 405, 409 (internal quotation

marks and citation omitted), cert. denied, 469 U.S. 858, 83 L. Ed. 2d 121 (1984). “The

question always is how would ordinary men naturally understand the [statement.]”

Id. at 318, 312 S.E.2d at 409 (citation omitted).

 1. Statements Made to the Press

 In the instant case, plaintiff alleges three statements by defendants were

defamatory per se. The first two statements plaintiff alleges were defamatory per se

were statements defendants provided to local media outlets. The essence of these

statements was that “the Supervisor who showed up to review” Officer Hickman’s use

of force had failed to follow the department’s reporting policy and “that Supervisor

ultimately received discipline for unsatisfactory performance and was ordered to

undergo additional training.”

 The trial court did not err in dismissing plaintiff’s claims of libel and slander

per se because these statements do not sufficiently identify plaintiff as their subject,

thus lacking the “of or concerning plaintiff” element of a viable defamation claim. “In

order for defamatory words to be actionable, they must refer to some ascertained or

ascertainable person and that person must be the plaintiff. If the words used contain

no reflection on any particular individual, no averment can make them dafamatory

 -7-
 TAUBE V. HOOPER

 Opinion of the Court

[sic].” Arnold v. Sharpe, 296 N.C. 533, 539, 251 S.E.2d 452, 456 (1979) (citation

omitted).

 We find the facts in the instant case comparable to those of Chapman v. Byrd,

124 N.C. App. 13, 475 S.E.2d 734 (1996). In Chapman, one of the defendants told his

coworkers to avoid dining at a certain restaurant in a shopping center because “ ‘[he]

heard someone over there has AIDs [sic].’ ” Id. at 15, 475 S.E.2d at 736. Nine people

worked at the shopping center at the time, and the defendant did not further specify

which person he believed had AIDS. Id. These nine workers sued the defendant for

defamation, alleging this statement defamed them each individually. Id.

 Distinguishing the case from Carter v. King, 174 N.C. 590, 592, 94 S.E. 4, 5

(1917) (holding plaintiff juror stated viable defamation claim by alleging defendant

stated “there was one man on the jury that was not bribed”), this Court held that the

plaintiffs had not stated a viable defamation claim because the statement did not

adequately identify them. Chapman, 124 N.C. App. at 16-18, 475 S.E.2d at 737-38.

We reasoned that “here the statements concern only one person in a group of nine,

i.e., the statements referred to ‘someone.’ Plaintiffs have not cited nor have we found

any North Carolina case holding that any one person of a group of nine may bring a

defamation action based on statements made about a single unidentified member of

the group. . . . Since the alleged statements referred only to ‘someone’ in a group of

nine, they clearly do not refer to some, most or all of the group.” Id. at 16-17, 475

 -8-
 TAUBE V. HOOPER

 Opinion of the Court

S.E.2d at 737-38 (citing Arcand v. Evening Call Publishing Co., 567 F.2d 1163, 1165

(1st Cir. 1977) (holding defamatory statement referring to one unspecified police

officer in a group of twenty-one was not “of or concerning” each individual officer in

group).

 In the instant case, the allegedly defamatory statements referred to “the

Supervisor who showed up to review the incident.” Plaintiff points to the fact that

local media outlets and people following the story ascertained that she was the

referenced supervisor soon after defendants made the statements. However, we

cannot consider this fact in reviewing plaintiff’s claims that these statements were

defamatory per se. We are limited to an interpretation of only the language within

the statements’ four corners. Renwick, 310 N.C. at 318, 312 S.E.2d at 409 (citation

omitted). Here, similar to Chapman, defendants’ statements to the press concern one

unidentified supervisor in the Asheville Police Department, of which there are many,

that responded to Officer Hickman’s use of force incident.

 The only case we are able to find in which the surrounding context was

remotely considered in reviewing whether an allegedly per se defamatory statement

was “of or concerning plaintiff” is Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25,

568 S.E.2d 893 (2002). In that case, a campaign advertisement accused “Dan Boyce’s

law firm” of unethical practices. Id. at 33, 568 S.E.2d at 900. In holding that each

plaintiff lawyer of the firm stated a claim for libel per se, we reasoned that the

 -9-
 TAUBE V. HOOPER

 Opinion of the Court

statement “maligned each attorney in the firm, of which there [were] only four.

Moreover, . . . identification of the law firm of Boyce & Isley, PLLC was readily

ascertainable from the reference to ‘Dan Boyce’s law firm.’ ” Id.

 The instant case is distinguishable from Boyce & Isley, PLLC. Defendants’

statements do not malign every member of a small group whose members are readily

identifiable by the community at large. Rather, the statements refer to the one

“supervisor,” of which there are many in the Department, that responded to the

reported incident of force by a subordinate officer. Unlike “Dan Boyce’s law firm,”

whose named member was a candidate running a statewide campaign for Attorney

General, id. at 27, 568 S.E.2d at 896-97, we do not believe that an ordinary person

hearing defendants’ statements about “the supervisor” on duty would be able to

readily ascertain plaintiff’s identity.

 Because these allegedly defamatory statements do not sufficiently identify her

as their subject, plaintiff has failed to plead viable claims of libel and slander per se.

The trial court did not err in dismissing these claims.

 2. Statement in Mandatory Affidavit of Separation

 The third statement underlying plaintiff’s claims of libel per se was in the

Affidavit of Separation submitted by defendant Hooper to the North Carolina

Criminal Justice Education and Training Standards Commission. In this mandatory

report detailing the nature of plaintiff’s subsequent separation from the Department,

 - 10 -
 TAUBE V. HOOPER

 Opinion of the Court

defendant Hooper checked a box stating that “[the Department] IS aware of any

investigation(s) in the last 18 months concerning potential criminal action or

potential misconduct by this officer.”

 As an initial matter, we note that plaintiff’s complaint has overcome the hurdle

presented by the qualified privilege claimed by defendants at the pleadings phase

because she alleges malice in defendant Hooper’s publication of the statement. See

Andrews v. Elliot, 109 N.C. App. 271, 275-76, 426 S.E.2d 430, 433 (1993) (holding

defense of qualified privilege in publishing statement does not defeat claim of

defamation per se at pleadings stage where complaint alleges actual malice in

publication).

 Plaintiff argues that this statement was libelous per se because it tended to

impeach her in her profession as a law enforcement officer. We find that the truth of

the referenced statement defeats plaintiff’s claim. Furthermore, the referenced

statement is not per se actionable.

 Plaintiff’s complaint acknowledges that she “had been the subject of an

investigation into potential unsatisfactory job performance as stated in the Written

Warning she had received.” The complaint states that the Department’s Professional

Standards Section investigated Officer Hickman’s use of force and the surrounding

circumstances, and that “[a]s a result of the finding of the investigation, a

recommendation was made to sustain an allegation of Unsatisfactory Performance

 - 11 -
 TAUBE V. HOOPER

 Opinion of the Court

against [plaintiff,]” and plaintiff was subsequently disciplined with a written warning

and brief suspension without pay. Thus, the statement that the Department was

aware of an investigation into plaintiff’s potential misconduct was established as true

by the allegations of the complaint. Truth is an absolute defense to an allegation of

defamation. Holleman v. Aiken, 193 N.C. App. 484, 496-97, 668 S.E.2d 579, 587-88

(2008). Where plaintiff’s own pleadings establish the truth of an allegedly defamatory

statement, dismissal per Rule 12(b)(6) is proper. Id.

 Furthermore, a statement that plaintiff had been investigated for “potential

misconduct” does not tend to impeach her in her profession as a law enforcement

officer as a matter of law. We have previously held more concrete accusations

concerning actual, rather than potential, workplace misconduct not actionable per se.

See, e.g., Pierce v. Atl. Grp., Inc., 219 N.C. App. 19, 34, 724 S.E.2d 568, 578-79 (2012)

(“We do not believe that Plaintiff’s complaint, alleging that Defendant ‘falsely

contended’ that Plaintiff ‘falsified his time card,’ or reported Plaintiff to the Nuclear

Regulatory Commission sets forth a cause of action for libel per se sufficient to survive

Defendants’ Rule 12(b)(6) motion.”) (alterations omitted); Stutts v. Power Co., 47 N.C.

App. 76, 78, 82, 266 S.E.2d 861, 863, 865 (1980) (holding statement by plaintiff-

employee’s supervisor that he was “fired . . . for a dishonest act and falsifying the

records” by punching time card on day of absence from work not actionable per se as

professional impeachment). The statement that plaintiff was investigated for

 - 12 -
 TAUBE V. HOOPER

 Opinion of the Court

“potential misconduct” is far more vague, and does not allege the existence of any

actual misconduct in and of itself. Therefore, the trial court did not err in dismissing

plaintiff’s libel per se claims based upon defendant Hooper’s statement in the

Affidavit of Separation.

 III. Conclusion

 For the foregoing reasons, we find no error in the trial court’s dismissal of

plaintiff’s claims pursuant to Rule 12(b)(6).

 AFFIRMED.

 Judges DILLON and BERGER concur.

 - 13 -